**In the Matter of A.P.**

No. 2–01–013–CV.

Court of Appeals of Texas, Fort Worth.

Oct. 18, 2001.

Deborah Nekhom, Fort Worth and Dean M. Swanda, Arlington, for Appellant.

Tim Curry, District Attorney, Charles M. Mallin, Chief Appellate Assistant Criminal District Attorney, Michael R. Casillas, Elizabeth Berry and Tiffany Hamilton, Assistant District Attorneys, for Appellee.

Panel F: CAYCE, C.J., DAY, J., and JOHN HILL, J. (Retired, Sitting by Assignment).

## OPINION

JOHN HILL, Justice (Retired).

A.P., a juvenile, appeals from a judgment that he engaged in delinquent conduct and from a disposition order committing him to the Texas Youth Commission for a term not to exceed ten years, with a possible transfer to the Texas Department of Criminal Justice, Institutional Division. The jury found that A.P. had committed the offense of aggravated assault against Ramona Martinez. In three issues, A.P. contends that the evidence is legally and factually insufficient to support the jury's findings that he committed the offense of aggravated assault with a deadly weapon and that the trial court failed to orally make certain findings necessary to support the disposition ordered. We affirm because the evidence is both legally and factually sufficient to support the jury's verdict and because the trial court did not err by failing to make oral findings necessary to support the disposition ordered where the necessary findings are included within the disposition order.

█ A.P. contends in issue one that the evidence is legally insufficient to support the jury's finding that he committed the offense of aggravated assault against Ramona Martinez, both because there was insufficient evidence to show that he was one of two shooters who fired shots that hit her house and because there was insufficient evidence to show that either of the two shooters intentionally or knowingly threatened Martinez with imminent bodily injury. In considering a contention that the evidence is legally insufficient in a delinquency case, we view the evidence in the light most favorable to the State and determine whether, based on that evidence and any reasonable inferences therefrom, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *In re J.S.,* 35 S.W.3d 287, 292 (Tex.App.—Fort Worth 2001, no pet.)

█ An essential element of aggravated assault with a deadly weapon as alleged against A.P. is that he either personally or as a party intentionally or knowingly threatened Ramona Martinez with imminent bodily injury. Martinez testified that on a Sunday evening, while she was at a flea market in Fort Worth, a green Camaro stopped and its occupants asked where her boyfriend was. She identified the driver as Jesse Garcia and the back seat passenger as A.P. She indicated that they asked where her boyfriend was and then told her, "we've got something for him." She said that, at the time, A.P. was lying in the back seat of the car on an ice chest and was holding a gun. Martinez stated that after locating her boyfriend at a club, she left the club at about 10:30 p.m. She testified that she stopped to get her kids and went to a gas station in her van. She related that while driving home she saw Garcia in the green Camaro driving crazy and that A.P. was the only person

she saw with him. Martinez said that when she saw the Camaro stop in front of her house she stopped and watched while the passenger in the Camaro fired three shots. According to her testimony, she drove into the driveway next to her duplex after the Camaro left, her van facing the street. She testified that the Camaro returned while she was still sitting in the van and numerous shots were fired. She indicated that she and her children got down when the shooting started. Her testimony would indicate that she could see what was happening at the beginning before she got down. She said she saw Garcia firing his gun, and that she saw flashes coming from the passenger side as well.

Martinez described seeing three bullet holes in her house, and indicated that there were holes in her neighbor's house. She said that the day after the shooting she located a bullet hole "[a]t the other left side of the windows, the other side on the driveway." She stated that she meant the side where her van was parked.

Officer Trujillo of the Fort Worth Police Department testified that Martinez told him he arrived just after the shootings. He indicated that he believed there were a few bullets that had hit the apartment adjacent to that of Martinez.

Officer Pat Henzz, a crime scene search officer with the Fort Worth Police Department, testified that he found and collected eighteen bullet casings from the street and found and collected four fired bullets, all of which he found on the outside or inside of Martinez's house.

Other evidence presented related to the identification and apprehension of A.P. We hold that a rational jury could have determined, beyond a reasonable doubt, that, if A.P. were one of the shooters, he intentionally or knowingly threatened Martinez with imminent bodily injury.

A.P. argues that the evidence is insufficient to show that the two shooters intentionally or knowingly threatened Martinez with imminent bodily injury because the two shooters were firing at Martinez's house when she was either not there or was sitting in the van next to the house. This argument ignores Martinez's testimony that at least one of the bullet holes was found in the house at a window on the driveway side of her house, the driveway where she was sitting in her van at the time of the shooting. Under all the circumstances that we have described, we believe this constitutes evidence that would allow a reasonable jury to conclude that the shooters intentionally or knowingly threatened Martinez with imminent bodily injury.

A.P. also urges that the evidence is insufficient to establish that he was one of the two shooters. Martinez described the two gunmen in the Camaro as Jesse Garcia, the same person she had seen in the Camaro earlier, and the other guy who "was wearing that white shirt." She identified A.P. as the person whom she had seen earlier in the Camaro with Garcia and the person found with Garcia and two females in the Camaro shortly after the shooting. She acknowledged that she had not previously seen the two females. She said she only saw Garcia shoot the second time shots were fired at her house. She indicated that she could not see inside the car.

Officer Rick Trujillo said that Martinez described the vehicle used as a newer-model dark green Pontiac, possibly a Firebird or Trans Am. He said she indicated one of the shooters was wearing a dark blue starter-type sports jersey with white lettering and the other was wearing a white T-shirt. Officer Trujillo indicated that his assist officer broadcast that information. He stated that right after the description was broadcast Martinez said the vehicle might be in a certain area of Azle Avenue near several bars and clubs. Officer Trujillo related that shortly after the information was broadcast an officer noticed a vehicle and occupants that he thought matched the description.

Officer Trujillo indicated that, when he took Martinez to the scene where two men and two women had been apprehended, she identified the two men as the ones who had shot her home. Trujillo expressed his opinion that the two men matched the description that Martinez had given. He identified A.P. as one of the two individuals arrested. Trujillo also related that a nine millimeter, Uzi-type weapon was found in the vehicle driven by Garcia that matched a description of the weapon that Martinez had described as being used in the shooting. He stated that officers also found ammunition for the weapon in the vehicle.

Officer Ricardo Castro of the Fort Worth Police Department testified that while he was on patrol on September 18, 2000, he heard the broadcast of a vehicle description and a suspect description. He indicated that the vehicle's description he heard was dark green and that it could be a newer-model Camaro. The suspect description was of a driver who was a Hispanic male, bald-headed with a moustache, possibly wearing a blue jersey shirt, and a Hispanic male, with long-ish black hair, wearing a white shirt. He stated that at the time he got the broadcast a dark green Firebird went by him, driven by someone matching the driver's description. According to Officer Castro, there were three other individuals in the car.

Castro testified that the body style of Camaros and Firebirds is very similar. He stated that he called back to find out if it could have been a Firebird but the person with whom he talked was not sure.

Castro also indicated that the male passenger matched the other description that he had. There were also two females in the vehicle. He said that he found an automatic pistol in the back of the hatchback while conducting a consent search. Officer Castro identified A.P. as a passenger who was sitting in the back of the vehicle on the passenger side. Officer Castro indicated that he found the pistol in close proximity to A.P.'s arm, just behind A.P., "about a four [sic] or a foot and a half from where his arm was lying." Officer Castro also stated that Martinez identified Garcia and A.P. as the two shooters.

Officer Gutierrez of the Fort Worth Police Department identified himself as the one who relayed the description given by Martinez to the dispatcher for the purposes of broadcast. He indicated that the vehicle in which Garcia and A.P. were apprehended matched the vehicle description given by Martinez and that Garcia and A.P. also met the description Martinez gave police.

Officer Eric Abilez, a detective with the gang unit of the Fort Worth Police Department, testified that he prepared a photospread to display to Martinez. He indicated that she identified Garcia and A.P. as the two persons who shot at her house.

We hold that the evidence is sufficient because a reasonable jury could have determined from this evidence that A.P. was one of the two shooters. A.P. suggests that the evidence is insufficient because: (1) Martinez did not see him at the time of the shooting; (2) Martinez admitted she was not sure who the second shooter was; (3) only one weapon was found; and, (4) two females were in the car after the shooting, so it was possible for someone to be in the car who had no relation to the shooting.

Although Martinez did not see A.P. at the time of the shooting, she did testify that the passenger in the vehicle was wearing a white shirt and that she had seen Garcia, the driver, with A.P., in the car used in the shooting, shortly before the shooting occurred. She noticed that A.P. was wearing a white shirt on that occasion. Other testimony showed that A.P., wearing a white shirt, was with Garcia and others in the car shortly after the shooting. Evidence showed that a gun found in the car was located near A.P. Given all of the testimony, the fact that Martinez herself was unsure as to whether A.P. was one of the shooters does not render the evidence insufficient. We also fail to see how the fact that the second weapon was not recovered makes the evidence insufficient.

In support of his argument that no rational trier of fact could have found beyond a reasonable doubt that he was the second shooter, A.P. relies upon the cases of *Jackson v. Virginia*, 443 U.S. 307, 320, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *In re J.S.*, 35 S.W.3d 287, 292 (Tex.App.—Fort Worth 2001, no pet.); *In re G.A.T.*, 16 S.W.3d 818, 828 (Tex.App.—Houston [14th Dist.] 2000, no pet.); and *In re A.S.*, 954 S.W.2d 855, 858 (Tex.App.—El Paso 1997, no pet.). An examination of these cases shows that they are actually submitted as authority for the proposition that the *Jackson* standard is the required standard for review of a contention that the evidence is legally insufficient to support an order finding a juvenile guilty of delinquent conduct. None of the cases cited is inconsistent with our determination in this case. We overrule A.P.'s contentions presented in issue one.

For the same reasons, A.P. urges in issue two that the evidence is factually insufficient to support his conviction. When we review the factual sufficiency of the evidence in criminal cases, we view all the evidence in a neutral light and set

aside the verdict only if the proof of guilt is so obviously weak as to undermine confidence in the jury's determination or the proof of guilt, adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State,* 23 S.W.3d 1, 11 (Tex. Crim.App.2000). The criminal law standard for factual insufficiency is also applicable in juvenile cases. *In re C.P.,* 998 S.W.2d 703, 708 (Tex.App.—Waco 1999, no pet.). Having reviewed all of the evidence, we find that the proof of guilt is not so obviously weak as to undermine confidence in the jury's determination and is not greatly outweighed by contrary proof.

■ A.P. insists that in reviewing this case for the sufficiency of the evidence, we must reverse if the facts proven can be explained by any reasonable hypothesis other than the respondent's delinquency. As we have previously noted in this opinion, the standards for the review of sufficiency of the evidence are the same in juvenile cases as in criminal cases. Since the case of *Geesa v. State,* 820 S.W.2d 154 (Tex.Crim.App.1991), the reasonable hypothesis construct has not been applicable to criminal cases. *Id.* at 155. Consequently, we hold that it is no longer applicable in juvenile cases.

A.P. reminds us that this court held in *In re M.R.,* 846 S.W.2d 97, 101–02 (Tex. App.—Fort Worth 1992), *writ denied,* 858 S.W.2d 365 (Tex.1993), *cert. denied,* 510 U.S. 1078, 114 S.Ct. 894, 127 L.Ed.2d 87 (1994), that the reasonable hypothesis construct is still applicable in juvenile cases even though it is no longer applicable in criminal cases. That conclusion was unnecessary to make in view of the fact that the construct would still have been applicable in *In re M.R.* even under *Geesa* because the case was tried before the release of that opinion. *Id.* at 102. We believe that our conclusion in *In re M.R.* is inconsistent with the fact that the standard of review is the same in juvenile cases as it is in criminal cases. We therefore overrule *In re M.R.* to the extent that it holds that the reasonable hypothesis construct is still applicable in juvenile proceedings.

We overrule A.P.'s contention as presented in issue two.

■ In issue three, A.P. complains that the trial court failed to make findings necessary for the disposition and that the findings contained in the judgment are not supported by the record. If the court or jury does not find that the child is in need of rehabilitation or the protection of the public or the child requires that a disposition be made, the court is to enter a final judgment without any disposition. Tex. Fam.Code Ann. § 54.04(c) (Vernon Supp. 2001). The trial court made such findings in its disposition order, but did not orally announce those findings prior to its oral pronouncement of the disposition. We note that Texas Family Code section 54.04(f) provides that the court's reasons for its disposition are to be included in its order. Tex. Fam.Code Ann. § 54.04(f). We therefore hold that the record adequately reflects that the required findings were made.

A.P. urges that the findings must be orally pronounced prior to the announcement of disposition, stating that, "The punishment pronounced by the court is what counts, not the punishment recited and supposedly memorialized in the judgment." A.P. relies upon the case of *Coffey v. State,* 979 S.W.2d 326, 328 (Tex.Crim.App.1998), in support of his contention. In *Coffey,* the court held that, in the case of a variation between the oral pronouncement of the sentence and the written memorialization of the sentence, the oral pronouncement controls. *Id.* at 328. The court also noted that the written judgment may not decrease or increase the punishment that has already been imposed. *Id.* at 328–29.

A.P. does not refer us to any requirement that the required findings must be orally pronounced prior to the oral pronouncement of disposition, and we are not aware of any. In the case at bar, we find no conflict between the sentence as orally pronounced and as memorialized in the disposition order.

A.P. urges that the record flatly contradicts the finding in the disposition order, but does not state in what way it is in conflict. If the reference is to the fact that the findings reflected in the disposition order were not orally stated, we have already noted that we are not aware of any requirement that they be orally stated. Rather, the family code requires that they be contained in the court's order. We overrule A.P.'s contentions as presented in issue three.

The judgment is affirmed.