83 S.W.3d 400 (2002)
In the Matter of B.P.H.
No. 2-01-241-CV.
Court of Appeals of Texas, Fort Worth.
August 15, 2002.
*402 The Britten Law Firm and Lacy D. Britten, Fort Worth, for appellant.
Tim Curry, Criminal District Attorney; Charles Mallin, Chief, Appellate Division; Anne E. Swenson and Elizabeth A. Berry, Assistant District Attorneys of Tarrant County, for appellee.
PANEL B: DAY, LIVINGSTON, and GARDNER, JJ.

OPINION
ANNE GARDNER, Justice.

INTRODUCTION
This is a juvenile appeal from an adjudication of delinquent conduct. The juvenile court found thirteen-year-old B.P.H. (hereafter "Appellant") engaged in delinquent conduct by committing the offenses of false report and retaliation and granted him *403 probation not to exceed twelve months.[1] In four points, Appellant complains: (1) the trial court erred by denying his motion to quash; (2) the evidence is legally and factually insufficient to prove intent to commit retaliation; (3) the evidence is legally and factually insufficient to prove A.M. was a witness as required by the retaliation statute; and (4) the trial court erred by signing and entering findings of fact and conclusions of law that do not comport with the judgment. We affirm.

PROCEDURAL AND FACTUAL BACKGROUND
T.U., a fourteen-year-old student at Colleyville Middle School, testified that, on or about Friday, February 16, 2001, during fourth period English class, she overheard Appellant and a fellow classmate, C.P., talking about making cocktail bombs and other "Columbine-like activity."[2] Shortly afterward, Appellant placed a spiral notebook on T.U.'s desk opened to a page that had a map of the upstairs classrooms of the school drawn on it. The map detailed Appellant and C.P.'s plan to kill several students and teachers. During class, Appellant, C.P., and T.U. exchanged notes discussing the boys' plans to attack the school. After English class, T.U. confronted Appellant and C.P. about their plans. C.P. threatened T.U., saying that if she told anyone about the map, he would shoot her.
Tuesday, February 20, 2001, after a holiday weekend, T.U. was walking by C.P. during Advisory period when C.P. said, "Boom, boom, goes Bubbles," or "Uh-oh, Bubbles is dead."[3] A.M., also a fourteen-year-old student at Colleyville Middle School, testified that, during lunch, he engaged in a conversation with Appellant and C.P. about "a hit list." Appellant told A.M. that he and C.P. were planning to kill a bunch of people on TAAS testing day in March.
After lunch, A.M. was picking up attendance cards from the classrooms when he saw Appellant and C.P. together again. They were upstairs leaning against a wall and talking about the hit list and the map. A.M. saw C.P. working on the hit list and Appellant working on the map. According to A.M.'s testimony, Appellant then took out a knife and told A.M., "if you tell, I'm going to kill you and your mother and your father."
T.U. testified that, later that same day, she noticed Appellant and C.P. coming from the direction of her locker. T.U. opened her locker and discovered another map and a list of names. The list of names was labeled the "K-Group." T.U., now more scared than before, took the map and the list to give to the vice-principal, Mike Fitzwater. After T.U. was in Fitzwater's office, A.M. entered and told the vice-principal about Appellant and C.P.'s plan and Appellant's threat to kill him and his family if he told.
Officer Cheryl Ingalsbe, of the Colleyville Police Department, the school resource officer, was already in Fitzwater's *404 office during both T.U.'s and A.M.'s discussions with Fitzwater. After listening to T.U. describe Appellant and C.P.'s plan to kill people in school, Officer Ingalsbe went to locate the two boys. She found Appellant in his math class but, because C.P. was truant from class and could not be found, Officer Ingalsbe called C.P.'s mother at work.
Officer Ingalsbe then took Appellant to the Colleyville Police Department and placed him in an interview room. Shortly thereafter, C.P.'s mother arrived with C.P. With both Appellant and C.P. together in the interview room, Officer Ingalsbe began her paperwork on the two juveniles. While Appellant and C.P. were together they were laughing and "cutting up." Officer Ingalsbe had not yet began to ask them questions when Appellant started describing the plan. Appellant said they were going to wait until Officer Ingalsbe was in a DARE class in the sixth grade hallway, then they were going to go into the office and "take out" the office staff so they could not call her. After they were finished with the office staff, they were going to go upstairs and finish killing people and taking hostages from the list. Appellant said they were going to rape the hostages before they released them. As Officer Ingalsbe finished her pre-questioning paperwork, Appellant and C.P. were still laughing. Appellant asked Officer Ingalsbe if he was going to be in the news and stated he "always wanted to be on television."
On February 21, 2001, the juvenile court held a detention hearing wherein it found probable cause for delinquency and ordered Appellant detained in the Tarrant County Juvenile Detention Center. Five days later, the juvenile court ordered electronic monitoring and home detention for Appellant. On April 12, 2001, the State filed its Second Amended Petition alleging Appellant retaliated against both T.U. and A.M., made a false report, and made a terroristic threat towards both T.U. and A.M.
Prior to the adjudication hearing before the court, Appellant filed a motion to quash the false report allegation; the trial court denied the motion. After a one-day trial, on April 20, 2001, the juvenile court found beyond a reasonable doubt that, having committed the offenses of false report and retaliation, Appellant was delinquent.[4] The juvenile court assessed punishment at twelve months' probation. Appellant filed a motion for new trial alleging the evidence was factually insufficient to support the offenses of false report and retaliation, and that the trial court erred by failing to grant the motion to quash. The trial court denied Appellant's motion. Appellant timely filed a notice of appeal.

ANALYSIS
Motion to Quash
In Appellant's first point, he contends the trial court erred by denying his motion to quash the false report allegation in the State's second amended petition. Appellant argues the trial court should have granted his motion because the State failed to specify to whom the alleged false report was made and the nature of the offense which Appellant was alleged to have communicated. Appellant insists the State's failure to provide this information does not provide fair notice and is in violation *405 of the Texas Family Code and due process. We disagree.
A motion to quash should be granted only where the language regarding the accused's conduct is so vague or indefinite that it fails to give the accused adequate notice of the acts he allegedly committed. Smith v. State, 895 S.W.2d 449, 453 (Tex.App.-Dallas 1995, pet. ref'd). We will uphold the trial court's denial of a motion to quash as long as it did not abuse its discretion. Id.; Williams v. State, 834 S.W.2d 613, 615 (Tex.App.-San Antonio 1992, no pet.).
In a juvenile proceeding, petitions for an adjudication hearing are governed by the family code. L.G.R. v. State, 724 S.W.2d 775, 776 (Tex.1987). Accordingly, the petition must state "with reasonable particularity the time, place, and manner of the acts alleged and the penal law or standard of conduct allegedly violated by the acts." Tex. Fam.Code Ann. § 53.04(d)(1) (Vernon 1996). This provision is mandatory. In re D.W.M., 562 S.W.2d 851, 852 (Tex.1978); M.A.V., Jr. v. Webb County Court at Law, 842 S.W.2d 739, 745 (Tex.App.-San Antonio 1992, writ denied); see also In re Gault, 387 U.S. 1, 33, 87 S.Ct. 1428, 1446, 18 L.Ed.2d 527 (1967) (holding that due process requires reasonably particular notice in juvenile cases). Notably, this standard is less stringent than the statute applicable to criminal indictments. In re A.B., 868 S.W.2d 938, 940 (Tex.App.-Fort Worth 1994, no writ).
Despite the civil nature of juvenile proceedings, the Supreme Court of Texas has recognized a juvenile's right to the essentials of due process and fair treatment. L.G.R., 724 S.W.2d at 776; In re J.R.R., 696 S.W.2d 382, 383-84 (Tex.1985). Due process requires that a juvenile must be informed of the specific issues he is to meet. Gault, 387 U.S. at 33, 87 S.Ct. at 1446; Carrillo v. State, 480 S.W.2d 612, 615 (Tex.1972); M.A.V., 842 S.W.2d at 745. It is not, however, essential that the petition allege an offense with the particularity of a criminal indictment. A.B., 868 S.W.2d at 940; M.A.V., 842 S.W.2d at 745. The charge need only be reasonable and definite. M.A.V., 842 S.W.2d at 745; Robinson v. State, 204 S.W.2d 981, 982 (Tex.Civ.App.-Austin 1947, no writ).
Appellant argues that the State had to plead more specific facts in order to provide him with adequate notice. Reasonable particularity, as contemplated by the family code and due process, is satisfied if the State presents allegations in accordance with the penal code; the State is not required to plead additional facts unless they are essential to proper notice. In re A.A., 929 S.W.2d 649, 654 (Tex.App.-San Antonio 1996, no writ); see C.F. v. State, 897 S.W.2d 464, 471 (Tex.App.-El Paso 1995, no writ) (finding petition sufficient for notice in juvenile adjudication for indecency with a child because it identified acts allegedly committed and identified relevant part of penal code violated).
The relevant part of the State's Second Amended Petition provides:
PARAGRAPH THREE: And it is further presented that said child has engaged in delinquent conduct in that the child violated a penal law of this State punishable by imprisonment, to-wit: Section 42.06 of the Texas Penal Code when on or about the 17th day of February, 2001, in the County of Tarrant and State of Texas, he did then and there knowingly communicate a report of a future offense that he knew to be false or baseless and would ordinarily place a person in fear of imminent serious bodily injury and the false report was of an emergency involving a public primary school, to-wit: Colleyville Middle School[.]
*406 In this case, the petition provides Appellant with notice of the time, place, and manner of the acts and alleges the violation of a specific penal code provision. It is important to also note that the petition tracks the language of the Texas Penal Code. The relevant section of the penal code states:
[a] person commits an offense [of false report] if he knowingly initiates, communicates or circulates a report of a present, past, or future bombing, fire, offense, or other emergency that he knows is false or baseless and that would ordinarily... place a person in fear of imminent serious bodily injury ...
Tex. Penal Code Ann. § 42.06(a)(2).
We hold that, because the State pleaded the elements of false report and alleged facts sufficient to supply notice, Appellant was adequately apprized of the offense charged and the State fulfilled its pleading obligation. See A.A., 929 S.W.2d at 654 (noting petition not required to allege facts relied upon by State in a juvenile delinquency proceeding); C.F., 897 S.W.2d at 471 (holding petition sufficient for notice in juvenile adjudication for indecency with a child); A.B., 868 S.W.2d at 941 (holding State met pleading obligation by pleading attempted robbery elements); In re S.D.W., 811 S.W.2d 739, 748-49 (Tex. App.-Houston [1st Dist.] 1991, no writ) (holding petition is not required to allege facts relied upon by State). We overrule Appellant's first point.
Legal and Factual Sufficiency: Retaliation
In Appellant's second and third points, he argues that, because the State failed to provide evidence of two elements, the evidence is legally and factually insufficient to support delinquent adjudication for retaliation. His second point maintains the facts are legally and factually insufficient to prove the requisite intent for retaliation against A.M. His third point insists the facts are legally and factually insufficient to prove A.M. was a witness or prospective witness as required to prove the offense of retaliation. We disagree.

Standard of ReviewLegal Sufficiency
In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the judgment. Cardenas v. State, 30 S.W.3d 384, 389-90 (Tex.Crim.App.2000); Narvaiz v. State, 840 S.W.2d 415, 423 (Tex. Crim.App.1992), cert. denied, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. McDuff v. State, 939 S.W.2d 607, 614 (Tex.Crim.App.), cert. denied, 522 U.S. 844, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The standard for review is the same for direct and circumstantial evidence cases. Kutzner v. State, 994 S.W.2d 180, 184 (Tex. Crim.App.1999).
When a juvenile challenges the legal sufficiency of the evidence in the peculiar civil/criminal hybrid known as juvenile proceedings, the appellate court is required to consider only the evidence and inferences tending to support the findings under attack. In re L.G., 728 S.W.2d 939, 943-44 (Tex.App.-Austin 1987, writ ref'd n.r.e.); In re Matter of A.B.R., 596 S.W.2d 615, 618 (Tex.Civ.App.-Corpus Christi 1980, writ ref'd n.r.e.). If there is any evidence of probative force to support the *407 trial court's finding, the point must be overruled and the finding upheld. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661-62 (1951); C.F., 897 S.W.2d at 472.

Standard of ReviewFactual Sufficiency
In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim.App.2000); Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App.1996). Evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust or the adverse finding is against the great weight and preponderance of the available evidence. Johnson, 23 S.W.3d at 11. Therefore, we must determine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the judgment or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. Id. In performing this review, we are to give due deference to the fact finder's determinations. Id. at 8-9; Clewis, 922 S.W.2d at 136. Consequently, we may find the evidence factually insufficient only where necessary to prevent manifest injustice. Johnson, 23 S.W.3d at 9, 12; Cain v. State, 958 S.W.2d 404, 407 (Tex.Crim.App.1997). The criminal law standard for factual insufficiency is also applicable in juvenile cases. In re A.P., 59 S.W.3d 387, 392 (Tex.App.-Fort Worth 2001, no pet.); In re C.P., 998 S.W.2d 703, 708 (Tex.App.-Waco 1999, no pet.).

Applicable Law
In this case the State must prove beyond a reasonable doubt that: (1) Appellant; (2) knowingly threatened to harm another by unlawful act; (3) in retaliation for or on account of the service of another as a; (4) witness or prospective witness. Tex. Penal Code Ann. § 36.06(a)(1)(A). One of the retaliation statute's purposes is to encourage "a certain class of citizens to perform vital public duties without fear of retribution." In re B.M., 1 S.W.3d 204, 207 (Tex.App.-Tyler 1999, no pet.) (quoting Doyle v. State, 661 S.W.2d 726, 728 (Tex.Crim.App.1983) and noting that offense of retaliation is defined as "intentionally or knowingly harms or threatens to harm another by an unlawful act in retaliation for or on account of the service of another as public servant, witness, prospective witness, or informant."). "Those public duties may include reporting criminal activities, testifying in official proceedings, or cooperating with the government in a criminal investigation." Morrow v. State, 862 S.W.2d 612, 615 (Tex.Crim. App.1993). The statute does not require the threatened retaliatory harm be imminent, nor does it require that the actor actually intend to carry out his threat. B.M., 1 S.W.3d at 207; Coward v. State, 931 S.W.2d 386, 389 (Tex.App.-Houston [14th Dist.] 1996, no pet.); Puckett v. State, 801 S.W.2d 188, 194 (Tex.App.-Houston [14th Dist.] 1990, pet. ref'd), cert. denied, 502 U.S. 990, 112 S.Ct. 606, 116 L.Ed.2d 629 (1991). Retaliation is a result oriented offense and the focus is on whether the conduct is done with an intent to effect the result specified in the statute. Herrera v. State, 915 S.W.2d 94, 98 (Tex. App.-San Antonio 1996, no pet.). Retaliatory intent may be inferred from an accused's acts, words, or conduct. Dues v. State, 634 S.W.2d 304, 305 (Tex.Crim.App. [Panel Op.] 1982).
Likewise, the State must prove A.M. was a "witness or prospective witness," as alleged and as contemplated by *408 the statute. Tex. Penal Code Ann. § 36.06(a)(1)(A). The Texas Court of Criminal Appeals defines the term "witness" as "one who has testified in an official proceeding." Jones v. State, 628 S.W.2d 51, 55 (Tex.Crim.App. [Panel Op.] 1980), accord Morrow, 862 S.W.2d at 614. A "prospective witness" is one who may testify in an official proceeding. Morrow, 862 S.W.2d at 614. A person who witnesses an offense, but who has not yet testified in a trial involving that offense is also a prospective witness. Solomon v. State, 830 S.W.2d 636, 637 (Tex.App.-Texarkana 1992, pet. ref'd). The statute applies to a person even if official proceedings have not yet been initiated, assuming the person is in a position to testify. Morrow, 862 S.W.2d at 615. Whether one is a prospective witness must be judged from the standpoint of the retaliator. Id.; Solomon, 830 S.W.2d at 637.

Relevant Facts
At trial, A.M. testified that sometime after lunch he had to pick up attendance cards from the classrooms as part of his duties as an office aide. As A.M. climbed the stairs to the second floor, he saw Appellant and C.P. together leaning up against a wall. As he approached the two boys, he noticed C.P. was working on the hit list, and Appellant was working on a map of the school designating who would be killed and who would be taken hostage. A.M. testified that Appellant and C.P. were talking about numerous things, however, they also spoke with each other about the hit list and the map. Noticing A.M. saw what they were doing, Appellant threatened A.M. with a knife, saying, "if you tell, I'm going to kill you and your mother and your father."
A.M. testified that when Appellant made the threat, he did not take Appellant seriously. A.M. also testified he thought Appellant and C.P.'s plan was all part of a "big joke." However, after hearing T.U. in the vice-principal's office, A.M. went into the office and told the vice-principal about Appellant and C.P.'s plan.

Application of Facts to Law
Regarding Appellant's second point, we hold that the evidence is legally and factually sufficient to prove he intended to retaliate against A.M. According to A.M.'s testimony, Appellant pulled out a knife and told A.M. he was going to kill him and both of his parents if A.M. told anyone about Appellant and C.P.'s plan. A reasonable trier of fact could have accepted this testimony as true and inferred from the accused's acts, words, and conduct that he knowingly and intentionally threatened A.M. with death if A.M. acted as a witness against him. See Dues, 634 S.W.2d at 305 (holding intent can be inferred from accused's acts, words, and conduct); C.F., 897 S.W.2d at 472 (holding any evidence of probative force in support of a trial judge's finding requires appellate court to uphold that finding). Likewise, after a careful and neutral review of the evidence, we hold the proof of guilt is not so obviously weak as to undermine confidence in the judgment that Appellant intentionally and knowingly retaliated against A.M. See Rudolph v. State, 70 S.W.3d 177, 178 (Tex.App.-San Antonio 2001, no pet.) (holding appellant's threatening phone calls to auto accident witness was retaliation); Helleson v. State, 5 S.W.3d 393, 394 (Tex.App.-Fort Worth 1999, pet. ref'd) (holding appellant's threat to shoot police officer or cut his heart out was retaliation); Webb v. State, 991 S.W.2d 408, 417 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd) (holding appellant's threat to woman who intended to report him to child protective services was retaliation). We overrule Appellant's second point.
*409 Appellant's third point argues the evidence was legally and factually insufficient to prove A.M. was a witness or prospective witness as contemplated by the retaliation statute. The evidence shows that, after Appellant realized A.M. was looking and listening to what he and C.P. were doing upstairs, Appellant produced a knife and threatened to kill A.M. and his parents if A.M. told anyone. A reasonable trier of fact could infer from A.M.'s testimony that Appellant thought A.M. could report the boys' plan to kill people and take hostages. See Solomon, 830 S.W.2d at 637 (holding the evidence revealed appellant anticipated victim would be a witness against him because he threatened to kill her); Webb, 991 S.W.2d at 417 (holding victim was prospective witness where appellant's threats demonstrated he knew victim intended to report a crime he committed). Likewise, A.M. became a prospective witness when he gave his statement to the vice-principal. Rudolph, 70 S.W.3d at 179; Johnston v. State, 917 S.W.2d 135, 137 (Tex.App.-Fort Worth 1996, pet. ref'd). Based on a careful and neutral review of the record, we also hold the evidence is not so obviously weak as to undermine our confidence in the judgment. Johnson, 23 S.W.3d at 11; A.P., 59 S.W.3d at 392. We overrule Appellant's third point.
Conflicting Judgment and Findings of Fact and Conclusions of Law
In Appellant's fourth point, he argues the trial court erred in signing and entering findings of fact and conclusions of law that do not comport with the court's judgment. Appellant asks this court to remand this case to the trial court for correction of the findings of fact and conclusions of law. The State argues that if there is a conflict between the judgment and the trial court's findings of fact and conclusions of law, the separately filed findings control for appellate purposes.[5] We agree with the State.
The judgment of delinquency was signed on April 23, 2001, the relevant part of which reads as follows:
The Court finds that on this the 20th DAY OF APRIL, 2001, said child was adjudicated delinquent in Paragraph(s) THREE AND SIX of the petition for the offense(s) of FALSE ALARM / REPORT, SECTION 42.06, and the date of offense was 2-17-01, AND OBSTRUCTION OR RETALIATION, SECTION 36.06, and the date of offense was 2-20-01, which are both felonies.
Notably, the judgment did not list any other offenses in support of delinquent adjudication.
On August 7, 2001, the trial court adopted findings of fact and conclusions of law, including the following paragraphs located in the findings of fact:
16. The Court finds beyond a reasonable doubt that Respondent child engaged in delinquent conduct by committing the felony offense of retaliation as alleged in paragraph one of the State's petition.
17. The Court finds beyond a reasonable doubt that Respondent child engaged in delinquent conduct by committing the state jail felony offense of false report as alleged in paragraph three of the State's petition.
18. The Court finds beyond a reasonable doubt that Respondent child engaged in delinquent conduct by committing the misdemeanor offense of terroristic threat as alleged in paragraph *410 four of the State's petition, by either acting alone or as a party.
19. The Court finds beyond a reasonable doubt that Respondent child engaged in delinquent conduct by committing the felony offense of retaliation as alleged in paragraph six of the State's petition.
A comparison of the judgment and the separately filed findings of fact reveals that the trial court found two additional offenses, in paragraphs sixteen and eighteen, supporting an adjudication of delinquent conduct.
While we agree with Appellant that there is an obvious difference between the judgment and the findings of fact, we do not agree that we are obliged to remand the case to the trial court for a correction of the findings of fact and conclusions of law. Juvenile appeals are governed by the same rules as other civil appeals. Tex Fam.Code Ann. § 56.01(b) (Vernon Supp.2002); C.F., 897 S.W.2d at 467; see A.B., 868 S.W.2d at 942 (noting civil rules of procedure govern procedural aspects of juvenile cases). Texas Rule of Civil Procedure 299a states, "Findings of fact shall not be recited in a judgment. If there is a conflict between findings of fact recited in a judgment in violation of this rule and findings of fact made pursuant to Rules 297 and 298, the latter findings will control for appellate purposes." Tex.R. Civ. P. 299a. Because the judgment should not recite findings of fact, and separately filed findings of fact control for the purposes of appeal, we hold the trial court did not err and find no reason to remand the case. See In re Marriage of Parker, 20 S.W.3d 812, 815 n. 1 (Tex.App.-Texarkana 2000, no pet.) (holding findings of fact in judgment not an issue on appeal pursuant to Texas Rule of Civil Procedure 299a); see also Frommer v. Frommer, 981 S.W.2d 811, 814 (Tex.App.-Houston [1st Dist.] 1998, pet. dism'd) (noting that judgments should not include findings of fact and stating, "the propriety of findings of fact and conclusions of law in judgments was once a matter of debate, in 1990 the Texas Supreme Court ended the debate once and for all."); Hill v. Hill, 971 S.W.2d 153, 155 (Tex.App.-Amarillo 1998, no pet.) (holding facts in judgment only given effect if there is no conflict between them and separate findings of fact). We overrule Appellant's fourth point.

CONCLUSION
Having overruled all of Appellant's points on appeal, we affirm the trial court's judgment.
NOTES
[1] Tex. Penal Code Ann. § 36.06(a)(1)(A) (Vernon Supp.2002) (creating retaliation offense); Tex. Penal Code Ann. § 42.06(a)(2) (Vernon 1994) (establishing false report offense).
[2] Columbine-like activity refers to the April 21, 1999 Columbine High School shootings in Littleton, Colorado. The shootings were perpetrated by two students armed with two sawed-off shotguns, a semiautomatic rifle, a handgun and more than thirty explosive devices. The gunmen killed themselves after killing or injuring one male teacher, ten male students and four female students. Deadly School Violence, Online NewsHour (Apr. 21, 1999), at http://www.pbs.org/newshour/bb/law/jan-june99 /shooting_4-20.html.
[3] T.U. testified at trial that "Bubbles" was her nickname.
[4] The trial court later found in its findings of fact and conclusions of law that Appellant, beyond a reasonable doubt, also committed the acts of retaliation and terroristic threat towards T.U. Appellant raises this conflict between the judgment and the findings of fact and conclusions of law in his fourth point.
[5] The State agrees with Appellant that we could abate this appeal and remand the case to the trial court to delete the additional findings of fact.