COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NOS. 2-03-132-CV
    
                                                     
 2-03-133-CV
  
  
  
IN 
THE MATTER OF C.P.D.
  
  
  
------------
 
FROM 
THE 323RD DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
 
I. Introduction
        Appellant 
C.P.D. perfected this appeal from the juvenile court’s judgment adjudicating 
him delinquent, modifying a prior disposition order, and ordering him committed 
to the Texas Youth Commission (TYC). Appellate counsel has filed an Anders 
brief asserting that there are no grounds that could be argued successfully on 
appeal. Anders v. California, 386 U.S. 738, 87 S. Ct. 1396 (1967). We 
grant counsel’s motion to withdraw and affirm the trial court’s judgment.
II. Procedural 
Background
        In 
November 2001, the juvenile court adjudicated C.P.D. delinquent for committing 
an aggravated sexual assault, a first-degree felony. See Tex. Penal Code Ann. § 22.021(e) 
(Vernon Supp. 2004). The court placed C.P.D. on two years’ probation and 
ordered him to abide by the court’s terms and conditions, including attending 
sex offender counseling and not violating any laws. During the course of 
probation, C.P.D. was unsuccessfully discharged from a sex offender counseling 
program and committed the offense of indecency with a child. See id. § 
21.11 (Vernon 2003).
        Thereafter, 
the State filed a motion to modify disposition and a second petition regarding a 
child engaged in delinquent conduct, alleging that C.P.D. violated the terms of 
his probation and engaged in delinquent conduct by contacting the genitals of 
C.R., a child younger than seventeen years and not his spouse, and by causing 
C.R. to touch C.P.D.’s genitals. The State requested that C.P.D. be committed 
to the custody of TYC.
        At 
the hearing, C.P.D. stipulated to the evidence showing that he engaged in 
indecency with a child by contact while on probation. The juvenile court 
adjudicated C.P.D. delinquent of the new offense and proceeded to consider the 
motion to modify. The court determined that C.P.D. had violated a reasonable and 
lawful term of his probation by committing the new offense and by being 
unsuccessfully discharged from sex offender counseling. The court entered an 
order of commitment, transferring C.P.D. to the custody and care of TYC for an 
indeterminate period not to surpass his twenty-first birthday.
III. The Anders 
Brief
        C.P.D.’s 
court-appointed appellate counsel filed a motion to withdraw as counsel. In 
support of his motion, counsel filed a detailed brief in which he avers that, in 
his professional opinion, this appeal is frivolous. The Supreme Court of Texas 
has held that the Anders procedure applies to juvenile proceedings. In 
re D.A.S., 973 S.W.2d 296, 299 (Tex. 1998) (orig. proceeding).
        Counsel’s 
brief and motion meet the requirements of Anders by presenting a 
professional evaluation of the record demonstrating why there are no arguable 
grounds for relief. This court provided C.P.D. the opportunity to file a pro se 
brief, even granting C.P.D. a lengthy extension of time to file a pro se brief, 
but he did not do so.[2]  Once C.P.D.’s 
court-appointed counsel files a motion to withdraw on the ground that the appeal 
is frivolous and fulfills the requirements of Anders, we must conduct an 
independent examination of the record and essentially rebrief the case to see if 
there is any arguable ground that may be raised on C.P.D.’s behalf. See 
Stafford v. State, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991).
IV. Independent 
Examination of Record
        A.     Proper 
Admonishments Given
        The 
juvenile court adequately admonished C.P.D. before his adjudication hearing and 
his modification hearing. Cf. Tex. 
Fam. Code Ann. § 54.03(b) (Vernon Supp. 2004) (setting forth 
admonishment requirements for juvenile offenders at adjudication hearings). 
C.P.D. indicated that he understood the charges against him and that he waived 
his rights.
        B.     Sufficient 
Evidence Supporting Adjudication and Modification
        C.P.D. 
stipulated to evidence that he committed the felony offense of indecency with a 
child while on probation and stated that the stipulated evidence was true and 
correct. Thus, the evidence supporting the adjudication of delinquency is 
legally and factually sufficient. See In re D.L.C., 124 S.W.3d 
354, 375-76 (Tex. App.—Fort Worth 2003, no pet.) (holding evidence legally and 
factually sufficient to support adjudication of delinquency); In re B.P.H., 
83 S.W.3d 400, 408 (Tex. App.—Fort Worth 2002, no pet.) (holding evidence 
legally and factually sufficient to support adjudication of deliquency).
        The 
stipulated evidence is likewise sufficient to support the trial court’s 
judgment to modify disposition and its order of commitment. See Tex. Fam. Code Ann. § 54.05(f); In 
re M.A.L., 995 S.W.2d 322, 324 (Tex. App.—Waco 1999, no pet.) (stating 
plea of true to probation violation and stipulation to evidence are analogous to 
judicial confession, justifying court’s finding that violation was committed 
by preponderance of evidence).
        C.     Effective 
Assistance of Counsel
        There 
is no evidence in the record showing that C.P.D. received ineffective assistance 
of counsel. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 
2052, 2064 (1984). Thus, we continue our review of the record by proceeding with 
the arguable grounds presented by C.P.D.’s counsel.
V. Counsel’s 
Arguable Grounds Are Not Meritorious
        C.P.D.’s 
counsel raises three arguable grounds in his brief: (1) the absence of C.P.D’s 
mother during the court proceedings directly contravenes the purpose of the 
family code provision requiring her attendance; (2) the trial court lacked 
jurisdiction because a copy of the State’s petition was not attached to the 
citation; and (3) the evidence is factually insufficient to support the 
judgment. However, after thoroughly examining each ground, C.P.D.’s counsel 
concludes that none of the arguments would be meritorious. We agree.
        A.     Absence 
of C.P.D.’s Mother Was Not Error
        In 
his first arguable ground, C.P.D.’s counsel contends that the absence of 
C.P.D’s mother during the court proceedings directly contravenes the purpose 
of the family code provision requiring her attendance. C.P.D.’s father and 
grandparents attended the adjudication and modification hearing, but his mother 
did not attend the hearing. Section 51.115 of the Texas Family Code requires all 
parents to attend the adjudication and disposition hearings. Tex. Fam. Code Ann. § 51.115(a) (Vernon 
2002). The code also provides, however, that “[i]f a person required under 
this section fails to attend a hearing, the juvenile court may proceed with the 
hearing.” Id. § 51.115(c); see also In re Edwards, 644 S.W.2d 
815, 818 (Tex. App.—Corpus Christi 1982, writ ref’d n.r.e.) (holding that 
issuance of summons to either of child’s parents is sufficient). C.P.D. made 
no objection at the hearing that his mother was not present. Accordingly, the 
alleged arguable error was not preserved. See Tex. R. App. P. 33.1(a) (stating that 
complaint must be made to trial court by timely request, objection, or motion as 
prerequisite to presenting complaint for appellate review).
        B.     Trial 
Court Had Jurisdiction
        C.P.D.’s 
counsel’s second arguable ground is that the trial court lacked jurisdiction 
because section 53.06(b) requires that a copy of the petition be attached to the 
citation. Tex. Fam. Code Ann. § 
53.06(b) (Vernon 2002). Although the citation in the record does not have a copy 
of the petition attached to it, the citation directs C.P.D. to appear on a 
certain date “[t]o answer the MOTION TO MODIFY DISPOSITION of the Criminal 
District Attorney’s office, Tarrant County, Texas, a copy of which is 
hereto attached . . . .” [Emphasis added.]  Additionally, the 
officer’s return on the citation recites that the officer delivered to C.P.D. 
the “MOTION TO MODIFY DISPOSITION a copy of which accompanies this citation.” 
[Emphasis added.]
        Our 
review of the record as a whole reveals no jurisdictional defects.  The 
juvenile court has jurisdiction over a child who is alleged to have engaged in 
delinquent conduct.  Tex. Fam. Code 
Ann. § 51.04(a) (Vernon 2002).  C.P.D. stipulated that he was 
seventeen years old at the time of the hearing and that he resided in Tarrant 
County.  See id. § 51.02(2)(A) (Vernon Supp. 2004) (stating 
“child” is person who is between ten and seventeen years of age).  The 
motion to modify disposition was not defective, and it provided sufficient 
notice to C.P.D. of the allegations against him. Cf. id. § 53.05(d) 
(stating that hearing on motion to modify disposition shall be held on petition 
of State and reasonable notice of hearing on motion to modify shall be given to 
all parties).  Likewise, the State’s petition regarding a child engaged 
in deliquent conduct was not defective, and it provided sufficient notice to 
C.P.D. of the allegations against him. Cf. id. § 53.04(d) (setting forth 
requirements of petition for adjudication); In re A.B., 868 S.W.2d 938, 
940 (Tex. App.—Fort Worth 1994, no writ) (discussing notice requirements for 
petition to adjudicate).  Accordingly, the appellate record’s failure to 
include a copy of the petition with the citation does not establish that the 
trial court lacked jurisdiction.
        C.     Evidence 
Supporting TYC Commitment Factually Sufficient
        In 
his third arguable ground, C.P.D.’s counsel argues that the evidence is 
factually insufficient to support commitment to TYC. Specifically, C.P.D.’s 
counsel contends that C.P.D. (1) was and continued to be a low-risk individual, 
(2) was not predatorily seeking out victims, (3) was not a deviant nor inclined 
toward deviance, (4) could successfully complete appropriate counseling and 
therapy, (5) committed the new offense as a result of being lured into a totally 
inappropriate setting, (6) facilitated immediate corrective action by 
self-reporting, (7) had grandparents who provided a supportive environment and 
were prepared for him to continue living with them, (8) presented an extremely 
low risk of recidivism, and (9) has the ability to do well in school.
        In 
reviewing C.P.D.’s sufficiency challenge to the evidence supporting his 
disposition, we review the evidence under the civil standard. See D.L.C., 
124 S.W.3d at 375.  In reviewing C.P.D.’s factual sufficiency claim, we 
consider and weigh all the evidence and set aside the judgment only if the 
finding is so against the great weight and preponderance of the evidence as to 
be manifestly unjust.  See id.
        If 
the court commits a juvenile to TYC, the court must find and include in its 
disposition order its determination that (A) it is in the child’s best 
interests to be placed outside the child’s home; (B) reasonable efforts were 
made to prevent or eliminate the need for the child’s removal from the home 
and to make it possible for the child to return to the child’s home; and (C) 
the child, in the child’s home, cannot be provided the quality of care and 
level of support and supervision that the child needs to meet the conditions of 
probation.  Tex. Fam. Code Ann. 
§ 54.04(i)(1).
        In 
this case, the trial court included the required statutory findings in its order 
of disposition.  However, C.P.D.’s counsel argues that the evidence is 
factually insufficient to support these findings. We disagree.
        The 
trial court heard testimony from Lawrence Post, Norman Scroggins, Mary Jo Smith, 
and Debbie Moore.  Each testified regarding C.P.D.’s ability to reform if 
he remained in the community.
        Lawrence 
Post, C.P.D.’s grandfather, testified that C.P.D. is an obedient child who 
attends church.  Mr. Post explained that he sought to comply with the 
court’s rules and requirements while C.P.D. was living with him, especially 
with regard to installing a lock on the computer room where C.P.D. accessed 
pornography, and that he is willing to devote his time and effort to see that 
C.P.D.’s counseling is successful.  He would like for C.P.D. to continue 
living at his home and has designed a room for C.P.D. in the new house Mr. Post 
is building.
        Norman 
Scroggins, a neighbor of the Posts, acknowledged that C.P.D. is a hard worker 
who helped him install sprinkler systems and fencing.  He explained that 
C.P.D. alerted him when his house was on fire and then helped him move his 
things out of the house.  He described C.P.D. as honest and courteous.
        Mary 
Jo Smith, C.P.D.’s math teacher, testified that C.P.D. possesses exceptional 
motivation to work hard and scored a ninety-four on his last test.  She 
said that she has not witnessed any behavior problems from C.P.D. and that there 
have been no complaints about him from other teachers.  Although she would 
welcome him back to her class, she did testify that the school computers have 
internet access and that there are places and instances where students are left 
alone.
        Debbie 
Moore, C.P.D.’s counselor, stated that she met with C.P.D. five times and that 
his testing revealed that he was a heterosexual male who was socially 
immature—a seventeen-year-old boy functioning on a fourteen-year-old’s 
level.  She testified that he is not the type of personality out to hurt 
somebody and that all of his history includes sexual contact with people he was 
familiar with in his family; thus, he does not seek out sexual contact and has 
shown no evidence of possessing a predatory nature.  She mentioned that, to 
her knowledge, C.P.D. has not committed other crimes.
        Based 
on her sessions with C.P.D., she found that he is “[l]ow risk based on no 
abnormal sexual preferences, no personality disorder, no criminal behavior, 
criminal thinking.”  However, she pointed out that just “because 
you’re low risk doesn’t mean that . . . person is never going to reoffend.  
Some will. . . . He happened to be a low-risk offender who offended again.”
        She 
believes that accessing pornography on the computer did not cause C.P.D. to 
reoffend; instead, “[h]e chose to reoffend.”  She stated that C.P.D. 
understands that his behavior is unacceptable, but he still chooses the 
behavior.  In other words, “[C.P.D.] is the only one that can keep 
himself from reoffending.”
        C.P.D. 
acknowledged to Ms. Moore that he did not put a lot of effort into the sexual 
offender treatment, and she testified that she is not sure how much benefit he 
actually received from the treatment.  She based her conclusion on the fact 
that C.P.D. has a tendency to give excuses and to justify his behavior.  
She said that it was up to C.P.D. to get what he could out of the 
treatment.  She sees a lot of motivation at this time for C.P.D. to get 
through the treatment because of the legal consequences.[3]
        Ms. 
Moore expressed her concern about C.P.D. continuing to be isolated from his 
peers if he continues to live with the Posts.  She said that although 
C.P.D. is very respectful, he is not comfortable with his peers and needs to 
develop age-appropriate skills.  She stated that school would be the best 
interaction he could get.  However, she said that C.P.D. needs to be 
closely supervised due to his second offense, which is “more of a community 
safety recommendation.”  Although she feels that there is always some 
risk when offenders are placed back in the community, she thinks that C.P.D. 
would be an acceptable outpatient candidate[4] with 
the additional support of individual therapy and possibly some psychiatric 
intervention.  Because she believes that there are a lot of things that 
C.P.D. has yet to deal with, she recommends continuing individual counseling 
possibly post-high school.  She concluded that there is an 85-90% chance 
that C.P.D. can be very successful in the treatment program and that the risk of 
recidivism is less than 5%.
        The 
trial court questioned Ms. Moore about C.P.D.’s honesty because a letter to 
the probation department stated that C.P.D., upon being initially confronted 
with the new charges, denied them, and the charges came out when the polygraph 
was done.  Ms. Moore confirmed that C.P.D. told his dad that he needed to 
move, but he did not disclose his sexual behavior at that point.  The trial 
court expressed its concern that C.P.D. had committed two first-degree felonies, 
and ultimately found that six months was not sufficient time to allow C.P.D. to 
complete further sex offender treatment.
        Because 
the trial court found that six months was not a sufficient amount of time to 
allow C.P.D. to complete further sex offender treatment and considering all of 
the evidence, we hold that the trial court's findings in its disposition order 
committing C.P.D. to TYC are not so contrary to the great weight and 
preponderance of the evidence as to be manifestly unjust.  Therefore, none 
of the arguable grounds raised by C.P.D.’s counsel are meritorious.
VI. Conclusion
        Based 
on our independent review of the record and the three arguable grounds raised by 
C.P.D.’s counsel, we have determined that there is no error on which an appeal 
could be based or which would require reversal.  Therefore, because we 
agree with counsel’s professional determination that an appeal in the instant 
case is frivolous, we grant counsel’s motion to withdraw and affirm the trial 
court’s judgment.
 
 
                                                  SUE 
WALKER
                                                  JUSTICE
  
  
PANEL 
A:   CAYCE, C.J.; WALKER and MCCOY, JJ.
 
DELIVERED: 
July 8, 2004


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
We denied C.P.D.’s untimely request for a further extension of time to file a 
pro se brief because his request was not filed until after this appeal was 
submitted, almost six months after C.P.D.’s original pro se brief due date.
3.  
The record demonstrates that possible charges against C.P.D. are also being 
pursued in the adult criminal system.
4.  
Ms. Moore stated that they are trying to get candidates through the program in 
six months and that C.P.D. could get through the program “in six months with 
his hands tied behind his back.”