

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00184-CR

KAREN LADELL ADAMS                                                    APPELLANT

V.

THE STATE OF TEXAS                                                         STATE

----------

### FROM THE 355TH DISTRICT COURT OF HOOD COUNTY
### TRIAL COURT NO. CR12292

----------

### MEMORANDUM OPINION[1]

----------

Appellant Karen Ladell Adams challenges the sufficiency of the evidence to support her conviction for three counts of retaliation by threat. We will affirm.

In August 2012, Adams called her friend and neighbor Carmela Clark and asked her to come over. Clark had known Adams for about fifteen years and had been to her house in Hood County on many occasions. Adams invited Clark

---

[1]*See* Tex. R. App. P. 47.4.

inside when she arrived, and they went to the living room and sat down. Agitated and upset-looking, Adams told Clark that she wanted Clark to hear from her that her son, Gordon Lewis, had been indicted for capital murder. Clark, who felt sorry for Adams, told her that if Lewis "was innocent, it would show when he came to trial" and that the indictment did not mean that Lewis was guilty.

Clark then asked Adams if she wanted Clark to say a prayer with her. Clark went to where Adams was sitting, grabbed her hands, and began to pray. When Clark prayed "that the guilty people would be found guilty and the innocent people would be able to go free," Adams, who seemed "a little more agitated, maybe angry," abruptly flung Clark's hands down, stood up, walked around the back of the love seat that she had been sitting in, and told Clark, "Well, they - - they'll never find it." After Adams told Clark that "they would need evidence" and that "they wouldn't be able to find it," Adams began talking about "getting the Judge, the . . . police captain, and . . . the sheriff."

Adams first mentioned Jerry East, the police captain. Adams said that "she wanted to get him," and Clark got the impression that Adams wanted "to shoot him." Adams explained that East had "been after Gordon, he's had it in for Gordon for a while."

Adams then said that she "would get all those motherf_ _ _ers." Clark asked Adams whom she was talking about, and Adams said "the Judge," "Jerry East," and "the sheriff." Regarding "the Judge," Adams confirmed that she was

2

talking about Ralph Walton, Jr., the judge for the 355th Judicial District Court of Hood County. Regarding how Adams intended to "get" Judge Walton, Adams explained that she had been a housekeeper at the courthouse, that she knew how to get through security, and that she knew where Judge Walton kept his gun. Clark tried to tell Adams that these people were just doing their jobs, but Adams seemed to get more agitated and angry and just talked about wanting to "get" them. Clark had the impression that Adams was serious about it.

Clark did not immediately report what Adams had said, but after thinking about the individuals that Adams had talked about "hurting" and the impact on their lives, their families, and the community, Clark called the police and reported her. Clark hoped that by calling the police, they "would be alerted to watch out . . . that they might be hurt."

Adams had another conversation at her house with Mary Tillison, a neighbor who stopped by to check on Adams after hearing that Lewis had been indicted. According to Tillison, Adams's eyes were gray and empty, and she said, "If I had a gun, I'd shoot the sheriff."[2] Adams made the comment in the context of talking about Lewis's arrest. When asked whether or not she thought Adams intended to carry out the threat, Tillison opined, "That day she looked like she could have." Tillison did not report Adams to the police—because she was afraid that doing so would jeopardize the safety of her family—but authorities

___

[2]Roger Deeds was the sheriff of Hood County at the time.

3

eventually contacted her and took her statement. Adams scared Tillison when Adams talked about shooting the sheriff.

A grand jury indicted Adams on one count of retaliation against Jerry East, one count of retaliation against Judge Walton, and one count of retaliation against Roger Deeds—all three "for or on account of the[ir] services or status . . . as . . . public servant[s]" and all three alleging the unlawful act of "verbally stating that [Adams] was going to cause bodily injury to" each. *See* Tex. Penal Code Ann. § 36.06(a)(1)(A) (West 2011). A jury convicted Adams of each count and assessed her punishment at six years' confinement for each count. The trial court sentenced her accordingly.

In a single issue, Adams argues that the evidence is legally insufficient to support her conviction on any of the three counts. Her principal argument is that instead of permissibly drawing reasonable inferences from the evidence, the jury improperly drew conclusions based on speculation.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to

4

draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs*, 434 S.W.3d at 170. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170.

As relevant here, a person commits an offense if she intentionally or knowingly threatens to harm another by an unlawful act in retaliation for or on account of that person's service or status as a public servant. Tex. Penal Code Ann. § 36.06(a)(1)(A). Comments supporting retaliation may be evaluated in the context within which they were uttered, and retaliatory intent may be inferred from an accused's acts, words, or conduct. *Meyer v. State*, 366 S.W.3d 728, 731

5

(Tex. App.—Texarkana 2012, no pet.); *In re B.P.H.*, 83 S.W.3d 400, 407 (Tex. App.—Fort Worth 2002, no pet.).

Regarding East and the statement that Adams wanted to "get" him, Adams argues that "getting" someone "can mean a whole range of things, many, if not most of which are not illegal," and that it was merely Clark's "subjective impression" that Adams meant that she wanted to shoot East. Regarding Judge Walton and the statements that Adams would "get" him and that she knew where he kept his gun, Adams argues that the "State never elicited any testimony from Clark about what Adams would do with the gun and once again left it to subjective impression, speculation and innuendo to substantiate this as a threat that Adams would use it on Walton." Adams points out that according to one reference, there are sixteen different definitions of the word "get."

While there certainly are numerous definitions of the word "get," we attribute a particular meaning to the term based on the context in which it is used. To demonstrate, if the evidence was that Adams was working as a waitress at a restaurant and that Clark, East, and Judge Walton were patrons there, then it might be reasonable to conclude that if Adams told Clark that she was going to "get" East and Judge Walton, she meant that she was going to wait on them. But that is not the evidence in this case, nor is it the context. The specific context in which Adams uttered her relevant comments was as follows: Adams's son had just been indicted for capital murder; Adams asked Clark over to her house for

6

the specific purpose of telling Clark about her son's indictment for capital murder; Adams seemed agitated and upset; when Clark prayed "that the guilty people would be found guilty and the innocent people would be able to go free," Adams became even more agitated; Adams said that East "had it in" for her son and had been "after" him for a while; Clark got the impression that Adams wanted to shoot East; Adams referred to East and Judge Walton as "motherf_ _ _ers"; Adams specifically referenced a gun; Clark contacted the police so that they would be alerted to the potential that they "might be hurt"; and Tillison did not report Adams because she was afraid that Adams would come to her house and murder her family. Adams's arguments challenging the element that requires a threat to harm another by an unlawful act are thus flawed because they disregard not only the context in which the statements were made but also the permissible inferences that the jury could have drawn therefrom. When Adams's statements are evaluated in context—instead of in a vacuum, or against some other irrelevant facts, as Adams's arguments impliedly suggest—it becomes readily apparent that the jury could have reasonably inferred that Adams threatened to harm East and Judge Walton by causing them bodily injury.

Regarding Deeds and the statement, "If I had a gun, I'd shoot the sheriff," Adams argues that the State never elicited any testimony that the sheriff being referenced by Adams was Deeds. Adams's statement unambiguously identified the person whom she would shoot if she had a gun—the sheriff. There was

7

other evidence that the sheriff at the time was Deeds, and the jury could have reasonably inferred that Adams meant Deeds when she made her statement. Adams directs us to no authority requiring specificity at the level that she demands.

As to all three counts, Adams argues that there was no evidence that she made the statements on account of East's, Judge Walton's, and Deeds's service or status as a public servant. *See* Tex. Penal Code Ann. § 36.06(a)(1)(A). The jury could have reasonably inferred that Adams made the statements on account of their service or status as public servants because when she made the statements, her son had just been indicted and each of the three individuals that she identified occupied positions involving, in some capacity, criminal law enforcement. *See, e.g.*, *Howard v. State*, Nos. 13-12-00659-CR, 13-12-00660-CR, 2013 WL 3327019, at *2 (Tex. App.—Corpus Christi June 27, 2013, pet. ref'd) (mem. op., not designated for publication) (holding that the trial court could fairly infer that appellant intended to harm the complainants on account of their service as witnesses in appellant's criminal case because appellant threatened to kill the victims' family immediately after being told by his probation officer of the statements they had made regarding appellants' offense). Indeed, when Clark was asked why Adams told her that she wanted to get these people, Clark responded, "I believe because she was upset about her son and that that would

8

be who would be involved." And as to Deeds specifically, Tillison testified that she believed the threat was made on account of his status as a public servant.

The evidence is sufficient to support Adams's conviction on all three retaliation counts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170. Accordingly, we overrule her sole issue and affirm the trial court's judgment.

PER CURIAM

PANEL: MEIER and GARDNER, JJ.[3]

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: February 5, 2015

---

[3]Justice McCoy was a member of the original panel but has retired in the interim.