Opinion issued April 1, 2004



     






In The
Court of Appeals
For The
First District of Texas




NO. 01-02–00945-CR




KENDRICK DEWAYNE STEWART, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 184th District Court
Harris County, Texas
Trial Court Cause No. 902192




O P I N I O N

          Appellant, Kendrick Dewayne Stewart, was indicted for capital murder. The
indictment alleged that, while in the course of committing and attempting to commit
the offense of retaliation against James Pienta, appellant intentionally caused the
death of Pienta by shooting him with a deadly weapon, namely, a firearm. Appellant
pleaded not guilty. A jury convicted appellant, and the court sentenced him to an
automatic sentence of life imprisonment. Tex. Pen. Code Ann. § 19.03(a)(2)
(Vernon Supp. 2004). In two issues, appellant challenges the legal and factual
sufficiency of the evidence to support the retaliation element of capital murder. We
affirm. 
Background
          Apartment C had been vacant for about five days, and had been vandalized by
unknown persons a few days before August 10, 2001, causing damage to the doors,
kitchen appliances, window, and upstairs area of the apartment. The owner of the
apartment building, Joseph Martin, reported the vandalism to the Houston Police
Department and contacted James Pienta, a maintenance man who had previously
done work for Martin, to inspect the apartment and provide an estimated cost for
repairs. The next day, Pienta and Martin met at Martin’s home and drove to the
vandalized apartment in separate vehicles. They arrived at the apartment between 10
and 11 a.m. When Martin unlocked and opened the door to the vandalized apartment,
he discovered that appellant had trespassed inside and was asleep on a mattress on the
floor. 
          Martin and Pienta woke appellant by pushing on the mattress and questioned
him about his presence in the apartment and his knowledge of the vandalism. 
Appellant said that he had entered the apartment by jumping the fence and that he was
spending the night in the apartment. He also claimed that he knew who had
vandalized the apartment. When Martin asked appellant for identification, he denied
having any. After Martin told appellant, “we better take your ID, otherwise you are
in trouble,” appellant retrieved his Texas identification card from his shoes and gave
it to Martin. Martin then told appellant and Pienta, “Let me make a call. I want to tell
the police somebody inside the building [sic],” and said that he would return. Martin
left Pienta alone in the apartment with appellant. 
          Martin went to apartment B, received permission to use the phone from 13-year-old Kenneth Kinmon, and telephoned 911 to request police assistance. While
Martin was still upstairs using Kinmon’s telephone, Kinmon saw appellant walking
from apartment C carrying a duffle bag. Appellant’s face appeared angry. Kinmon
asked appellant why he was mad, and appellant said, “I shot somebody.” Appellant
changed his clothes by putting on different shorts and gave Kinmon the duffle bag,
with instructions to take the bag to Kinmon’s apartment. 
          As Martin was leaving Kinmon’s apartment after using the telephone, Martin
saw appellant run in the opposite direction from the vacant apartment. Martin
recognized appellant’s bag because he had seen it inside the vandalized apartment
earlier that day and took it from Kinmon, stating that he would give the duffle bag
back to appellant. 
          On returning to the vandalized apartment and opening the door, Martin
discovered Pienta lying on the floor in a pool of blood. Martin dropped the duffle bag
and ran back to apartment B to telephone 911. After placing that call, Martin and a
group of people began to return to apartment C, where they encountered appellant
outside the apartments. Appellant was walking away from the apartments and stared
at Martin when they saw each other. Martin returned to apartment C to await the
police.
          When appellant left apartment C after the shooting, he spoke to several of his
friends who lived nearby and told them that a police officer had been shot. Friends
of appellant saw him in possession of Pienta’s wallet and keys. Appellant paid a
“crackhead” nine dollars to bring Pienta’s van from where it was parked near
apartment C to Gerale Broussard’s house, where appellant went after the shooting. 
Later that day, police officers discovered that Pienta’s van had been burned through
arson. Appellant was arrested the same day as the murder after he sought treatment
for burns to his body at a hospital, where he appeared, emitting an odor of gasoline. 
After his arrest, appellant gave a tape-recorded statement to D.S. Null, a peace officer
assigned to the homicide division of the Houston Police Department. In that
statement, appellant claimed that another individual, Brian Scott, had killed Pienta. 
          The autopsy established that Pienta was killed by a single gunshot wound to
the head above the left eye by a firearm that was a greater distance than one and a half
to two feet away from Pienta’s body. The blood splatter evidence established that
Pienta was standing about three feet away from the front door of the apartment when
he was shot.
Sufficiency of the Evidence
          Appellant’s two issues on appeal challenge the legal and factual sufficiency of
the evidence to support the retaliation element of capital murder. In assessing legal
sufficiency, we determine whether, based on all of the record evidence, viewed in the
light most favorable to the verdict, a rational jury could have found the accused guilty
of all of the essential elements of the offense beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2788-89 (1979); Swearingen v. State,
101 S.W.3d 89, 95 (Tex. Crim. App. 2003). In conducting our review of the legal
sufficiency of the evidence, we do not reevaluate the weight and credibility of the
evidence, but ensure only that the jury reached a rational decision. Muniz v. State,
851 S.W.2d 238, 246 (Tex. Crim. App. 1993).
          In reviewing factual sufficiency of the evidence, we consider all of the
evidence in a neutral light. Swearingen, 101 S.W.3d at 97. We must reverse a
conviction if the proof of guilt is so weak as to undermine confidence in the jury’s
determination, or if the proof of guilt, although adequate if taken alone, is greatly
outweighed by the proof of innocence. Id. Although we may disagree with the jury’s
verdict, we must defer to the jury’s determination of the weight and credibility of the
evidence and will reverse the jury’s verdict only to avoid manifest injustice. Id. 
When reviewing the sufficiency of evidence, we remain mindful of the jury’s role as
the exclusive judge of the credibility of witnesses and the weight to give their
testimony. Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996). 
          A person commits capital murder if he intentionally commits murder and
intentionally commits the murder in the course of committing or attempting to commit
the offense of retaliation. Tex. Pen. Code Ann. § 19.03(a)(2) (Vernon Supp. 2004). 
A person commits the offense of retaliation if he (1) intentionally or knowingly (2)
harms or threatens to harm another by an unlawful act (3) in retaliation for or on
account of the service or status of another (4) as either a public servant, witness,
prospective witness or informant, or as a person who has reported or who the actor
knows intends to report the occurrence of a crime. Tex. Pen. Code Ann. §
36.06(a)(1) (Vernon Supp. 2004). 
          Appellant does not challenge the sufficiency of the evidence to establish that 
he intentionally or knowingly killed Pienta by shooting him once in the head with a
firearm. Accordingly, we do not address those elements on appeal. See Urbano v.
State, 837 S.W. 2d 114, 116 (Tex. Crim. App. 1992). Moreover, appellant has not
challenged that Pienta was a prospective witness to appellant’s trespassing offense. 
A “prospective witness” is one who may testify in an official proceeding. See
Morrow v. State, 862 S.W.2d 612, 614 (Tex. Crim. App. 1993). A person who
witnesses an offense, but who has not yet testified in a trial involving that offense is
also a prospective witness. Id. at 615; see also Ortiz v. State, 93 S.W.3d 79, 86 (Tex.
Crim. App. 2002) (“Any person who is involved in an offense with a defendant, who
sees the defendant committing an offense, or who hears the defendant discuss
committing an offense is a ‘prospective witness’ in the prosecution of that defendant
because he ‘may’ testify.”). For Pienta to be a prospective witness, it was not
required that any official proceedings for trespass or vandalism be initiated. See
Morrow, 862 S.W.2d at 615. We conclude that, because Pienta witnessed appellant’s
trespass, Pienta was a prospective witness who might have been called to testify in
any future criminal proceedings against appellant. See id. at 614. Pienta was also a
prospective reporter of the offense because he was a person who, appellant knew,
intended to report the occurrence of appellant’s trespassing crime to the police, once
they appeared at the apartment following Martin’s telephone call to 911. See Tex.
Pen. Code Ann. § 36.06(a)(1)(B) (Vernon Supp. 2004). Given Pienta’s status as a
prospective reporter of the offense and a prospective witness in any court proceeding,
he was entitled to the special protections of the retaliation statute. See Webb v. State,
991 S.W.2d 408, 415 (Tex. App.—Houston [14th Dist.] 1999, pet. ref’d) (“The State
of Texas has a valid and substantial interest in protecting the integrity of its judicial
system and in allowing public servants, witnesses, and prospective witnesses to
perform their respective duties without interference from threats of physical
violence.”)
          Appellant’s entire sufficiency challenge pertains to the element in the
retaliation offense that required the State to prove that the murder occurred “in
retaliation for or on account of the service or status” of Pienta as both a prospective
reporter and prospective witness regarding appellant’s trespass into the apartment.
See Tex. Pen. Code Ann. § 36.06(a)(1). Retaliatory intent may be inferred from an
accused’s acts, words, or conduct. Dues v. State, 634 S.W.2d 304, 305 (Tex. Crim
App. [Panel Op.] 1982); See also In re B.P.H., 83 S.W.3d 400, 407 (Tex. App.Fort
Worth 2002, no pet.).
          In challenging the sufficiency of proof for this element, appellant asserts that
there are other possible reasons why he killed Pienta, other than in retaliation for or
on account of Pienta’s status or service as a prospective reporter or prospective
witness. These include the following: (1) appellant needed to evade Pienta to escape
from the apartment, (2) appellant wanted to steal Pienta’s wallet and van, or (3)
appellant may have not had any reason to harm Pienta and was “just mean.” 
Appellant also asserts that Martin’s testimony established that Martin believed that
appellant had witnessed the vandalism, did not feel he had grounds to keep appellant
in the apartment against his will, and would not have pursued criminal charges
against appellant. Moreover, according to appellant, it would be nonsensical for him
to kill Pienta in retaliation for or on account of his status or service as a prospective
reporter or prospective witness, because Martin, who was also a reporter of the
offense and prospective witness, had taken appellant’s identification and would still
have been available to testify. Relying on In re M.M.R. and Riley v. State, appellant
contends that the evidence is legally insufficient. See In re M.M.R., 932 S.W.2d 112,
114-15 (Tex. App.—El Paso 1996, no pet.) (holding evidence legally insufficient to
prove that security guard was injured in retaliation for or on account of status or
service as a public servant under circumstances showing that M.M.R., who was
juvenile detainee involved in altercation with another detainee, struck guard when
guard attempted to stop that assault; evidence established that M.M.R. struck guard
not to retaliate against guard for restraining appellant, but to escape and continue
assault against another juvenile); Riley v. State, 965 S.W.2d 1, 2 (Tex.
App.—Houston [1st Dist.] 1997, pet. ref’d) (holding that evidence legally insufficient
to prove that security guard injured in retaliation for or on account of status or service
as public servant under circumstances showing that prison inmate, appellant, walked
past central control desk, ignored commands to return to desk, and injured guard who
tried to block appellant from leaving).
          In contrast to In re M.M.R. and Riley, the record in this case contains extensive
evidence, both from appellant and from the circumstances of the offense
demonstrating that Pienta was killed in retaliation for or on account of his service or
status as a prospective reporter and prospective witness. See In re M.M.R., 932
S.W.2d at 114-15; Riley, 965 S.W.2d at 1. 
          In the time interval between shooting Pienta and leaving in Pienta’s van,
appellant spoke to three friends about why he shot Pienta. Sixteen-year-old Billy
Anderson testified that appellant said “he had shot some dude . . . they walked in on
him while he was [a]sleep and they had his ID card.” Fourteen-year-old Gerale
Broussard testified that he heard appellant say that “he was sleeping in the vacant
apartment and two men came and woke him up. And one of the men left to go call
the police and the other one stayed, and he was trying to like hold him inside, and that
is when he shot him.” Kevin Anderson, who was 17 years old, testified that appellant
said that “he didn’t want to do it, and he had to shoot a man.” Anderson further
testified that appellant told him the following: 
[H]e woke up, the owner and the maintenance man had stepped in the
apartment and the owner asked him for his ID. Owner left outside the
apartment, went to go and call the police. And Kendrick was asking the
custodian can he leave out of the house, but the custodian would not
allow him to leave the house. So he pulled his weapon, tried to take the
first shot, but I guess the gun jammed or not, and he took the second
shot. He said he shot him in the head.

Appellant told Anderson that the man was standing in front of the doorway to stop
him from leaving and that, after shooting the man, appellant took his wallet, cash, and
about 10 to 15 keys, grabbed his own possessions, and left. 
          Appellant’s version of events in the tape-recorded statement to Officer Null
contains direct evidence of appellant’s state of mind at the time of the shooting. After
Officer Null read appellant his statutory warnings, appellant waived his rights and
gave a statement about the shooting. Appellant stated that Mrs. Anderson kicked him
out of the apartment where he had been staying for having had sex with her daughter. 
Appellant acquired a mattress and spent the night in the vacant apartment until he was
awakened by two men who questioned him about some damage to the apartment. 
After the landlord left the apartment, appellant tried to leave the apartment, but the
“big guy” pushed him back. According to appellant, the “big guy” said that he was
a police officer. Appellant claimed that Brian Scott, a friend of his, suddenly
appeared in the apartment. Because the “big guy” wouldn’t let appellant out of the
apartment, Brian Scott pulled out a gun and shot the “big guy.” Appellant left the
apartment believing that he had shot a police officer. According to appellant, Brian
Scott knew that appellant would be at the vacant apartment because appellant had
nowhere else to go. Appellant, Scott, and a “crackhead,” left together in the “big
guy’s” van, and Scott and the “crackhead” burned the van later that day. 
          After viewing the evidence in the light most favorable to the verdict, we
conclude that a rational jury could have found that, after Pienta and Martin witnessed
appellant as a trespasser in the apartment, Pienta attempted to hold appellant in the
apartment while awaiting police, whose presence he expected at the apartment
because Martin had summoned them by telephoning 911. A rational jury could have
found that Martin’s statement, “I want to tell the police somebody inside the building
[sic],” alerted both Pienta and appellant that Martin would be pursuing trespass
charges against appellant. Then, in an attempt to keep appellant in the apartment for
the police, Pienta tried to block appellant from leaving the apartment. A rational jury
could have determined that appellant pulled out a firearm and shot Pienta once in the
head, in order to stop Pienta from (1) reporting to the police that he had found
appellant inside the apartment and (2) testifying at any future trial. 
          A rational jury could have rejected appellant’s claimed motives that he shot
Pienta only to escape from the apartment, to steal Pienta’s van and wallet, or for no
reason at all. Regarding the latter claim, the evidence shows that appellant himself
offered a reason for shooting Pienta. Within minutes of the crime, appellant told
Kevin Anderson that he had to shoot the man, that he didn’t want to do it, and that he
had a specific purpose in causing the death of Pienta. A rational jury could also have
determined that appellant stole Pienta’s wallet and van as an afterthought to killing
Pienta, given that appellant never mentioned to any of his friends or to the police that
the theft of Pienta’s property factored into his actions. Finally, a rational jury could
have found that appellant could have easily escaped from the apartment by merely
threatening Pienta with the firearm, rather than shooting him once in the head—an act
that would surely cause Pienta’s death. In his taped statement, appellant stated that
Pienta said, “[D]on’t shoot me” before he was shot, which suggests that Pienta would
have complied with any demands by appellant to permit appellant, either to leave the
apartment or to take Pienta’s property without any further use of force. Thus,
appellant’s choice to shoot Pienta in the head after Pienta had submitted to appellant
suggests that appellant wanted more than merely to escape from the apartment and
take Pienta’s property. 
          A rational jury could therefore have found, from the physical evidence, the
circumstances of the offense, appellant’s own statements concerning Pienta’s actions
when he was shot, and appellant’s statements to others concerning his motives for
shooting Pienta, that appellant shot Pienta not only to escape the apartment or to rob
Pienta but, rather, to prevent Pienta from reporting the trespass to the police and
possibly appearing at any future criminal proceeding. A rational jury could have
concluded that there was no other explanation for appellant’s killing Pienta from the
circumstances of this offense. 
          Appellant contends that, because he knew that Martin still remained as a
witness to the offense and that Martin had possession of appellant’s identification, it
would have been illogical for appellant to kill Pienta. There is no dispute, however,
that appellant killed Pienta by shooting him once in the head. One could hardly argue
that appellant was behaving logically that day, even under the circumstances as
appellant portrays them, because appellant chose to kill a man by shooting him once
in the head rather than go to jail to answer trespass charges punishable by a possible
sentence of one year or less. That appellant did not kill all witnesses to the offense
does not render irrational the jury’s having believed that appellant killed Pienta in
retaliation for or on account of his status or service as a prospective reporter or
prospective witness. 
          Appellant’s challenges to the factual sufficiency of the evidence reassert the
same arguments as his legal-sufficiency complaint. The existence of an alternative
reasonable hypotheses may be relevant to, but is not determinative of, a factual-sufficiency review. Wilson v. State, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999). As
discussed above, although alternative reasonable hypotheses exist in this case, we
conclude that a jury could have reasonably rejected them and found that appellant
shot Pienta in retaliation for or on account of his status or service as a prospective
reporter and prospective witness. We remain mindful of the jury’s role as the
exclusive judge of the credibility of witnesses, the weight to be given their testimony,
and the inferences that may be drawn from the evidence. See Jones, 944 S.W.2d at
648. Even if we were to disagree with the jury’s verdict, we must defer to the jury’s
determinations that depend on assessments of the weight and credibility of the
evidence, see Swearingen, 101 S.W.3d at 9, and we will not substitute our judgment
for that of the jury. See Clewis v. State, 922 S.W.2d 126, 129, 133 (Tex. Crim. App.
1996). 
          The proof of appellant’s guilt in this case is neither so weak as to undermine
the confidence of the jury’s determination, nor greatly outweighed by the proof of
appellant’s innocence. See id. Accordingly, the evidence does not establish that a
manifest injustice has occurred. See Swearingen, 101 S.W.3d at 97. 
          We conclude that the evidence is legally and factually sufficient to establish
that appellant committed the murder of Pienta in retaliation for or on account of his
service or status as a prospective reporter and prospective witness against him. 
          We overrule appellant’s first and second issues. 
Conclusion
          We affirm the judgment of the trial court.




                                                                        Elsa Alcala
                                                                        Justice

Panel consists of Justices Nuchia, Alcala, and Hanks

Publish. Tex. R. App. P. 47.2(b).