

# NUMBER 13-08-445-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**YOHANCE MURPHY**                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                              **Appellee.**

### On appeal from the 130th District Court of
### Matagorda County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Yañez and Garza
### Memorandum Opinion by Justice Yañez

In a bench trial, appellant, Yohance Murphy, was convicted of retaliation.[1] The trial

court sentenced appellant to five years' confinement.[2] By two issues, appellant contends

---

[1] *See* TEX. PENAL CODE ANN. § 36.06 (Vernon Supp. 2009).

[2] Appellant's sentence was enhanced by one prior conviction.

that the evidence is legally and factually insufficient to support his conviction. We affirm.

## I. BACKGROUND

While assisting another officer with an unrelated traffic stop, Officer Vickie Gilliam approached appellant, informed him that his car radio was too loud pursuant to a city ordinance, and asked him to lower the volume. Officer Gilliam testified that appellant refused, so she asked him for his license and insurance. According to Officer Gilliam, appellant did not produce his license and insurance and walked away. Officer Gilliam stated that she again asked appellant for his license and insurance, and then appellant "became belligerent, [used] profanity, [started] yelling." Officer Gilliam attempted to arrest appellant for disorderly conduct. Officer Gilliam stated that appellant refused to allow her to place the handcuffs on him and continued "cursing." With the assistance of two other officers, appellant was handcuffed. Officer Gilliam testified that after appellant was handcuffed, he was "yelling, calling [her] names. Still being very vulgar and trying to move away."

Officer Gilliam stated that appellant "had come up to [her] bowing his chest" and that appellant "was popping [her] chest with his chest." Appellant continued "cussing" at Officer Gilliam throughout the episode. According to Officer Gilliam, appellant refused to enter the police car, and the three officers had to "threaten to pepper spray him" so that he would enter the car. Once appellant was in the vehicle, he kicked the door and continued yelling and "being very abusive." Officer Gilliam asked appellant to stop kicking the door of her vehicle, and appellant refused. Appellant was also charged with resisting transportation.

According to Officer Gilliam, "[e]n route to the jail," appellant threatened to harm her children, which was recorded by her "in-car video." Officer Gilliam stated that "[i]n

2

reference to the arrest [she] made, [appellant was] threatening the lives of [her] children or to hurt them or harm them." The trial court admitted State's exhibit one, a video recording of the incident.[3] When Officer Gilliam entered her police vehicle, she pointed the camera in appellant's direction. In the video, appellant appears agitated and shouts obscenities at Officer Gilliam, including "stupid a** b****." In the video, Officer Gilliam does not respond to appellant.

At trial, while viewing the video, the following colloquy occurred:

[The State]:        Did the threat already happen? Was it during—in the patrol car?

[Officer Gilliam]:  Yes.

        . . . .

[The State]:        Was that when he asked you if you have kids? "Miss, do you have children?"

[Officer Gilliam]:  Yes.

[The State]:        And essentially, was it that they might be f'd [sic] by somebody for no reason and the reason's going to be you?

[Officer Gilliam]:  Right.

On cross-examination, Officer Gilliam stated that she had written an offense report, wherein she reported that, "[w]hile at the jail [appellant] threatened if anything happened to my children that I would know where it came from."[4] Officer Gilliam acknowledged that

_____

[3] The video camera was not pointed in appellant's direction when the incident began; however, there is an audio recording of what was said by appellant and Officer Gilliam during that time. When Officer Gilliam drove appellant to jail, however, she pointed the camera at appellant.

[4] We note that defense counsel stated that it was not possible to hear or understand what appellant stated in the video tape.

3

simply asking her if she had any children was not a threat. On re-direct examination, the following exchanged occurred:

[The State]: But that wasn't the threat, was it?

[Officer Gilliam]: No, it wasn't.

[The State]: Because it was right after?

[Officer Gilliam]: Right.

[The State]: When he said, "Do you have children, Miss," and then he said, "Something's going to happen to them some day" and it's all going to be as a result—

[Officer Gilliam]: My fault.

[The State]: It's going to be your fault and because of you?

[Officer Gilliam]: Yes.

[The State]: And that's on the video?

[Officer Gilliam]: It is.

. . . .

[The State]: But the threat wasn't whether or not you have children, the threat is whether or not something happens to them some day and it's going to be because of you?

[Officer Gilliam]: That's right.

[The State]: And that's what you heard on the video?

[Officer Gilliam]: Yes. I feel like my—

. . . .

[Officer Gilliam]: I feel like my children's safety, getting hurt by someone, is a danger for them when they're with me.

. . . .

4

[The State]:          Is that [threat] something you took seriously?

[Officer Gilliam]:     Yes, I did.

Appellant testified that he decided to go watch a game at a local nightclub.  After arriving at the club, appellant stated that he left his car with the ignition running and started talking to someone on the steps of the club.  Appellant stated that at some point, Officer Gilliam asked him to lower the volume of his car radio, he complied, and he walked back to the steps to continue his conversation.  Appellant testified that Officer Gilliam then asked him if he wanted to go to jail for evading detention.  However, according to appellant, he did not know that he had been detained.  Appellant stated that although he did not specifically use this language, he said, "Who's under detention?  How are you going to send me to jail because you hadn't asked me for my license."  Appellant admitted that the situation escalated "from loud music to evading" and then he was arrested for disorderly conduct due to his language.  Appellant admitted that he had been kicking the inside of Officer Gilliam's patrol car, explaining that he had been left in it for fifteen to twenty minutes with the windows up and the car off during the month of June.  Appellant admitted that he asked Officer Gilliam if she had any children, but denied making any threats to harm them.  When asked why he asked whether Officer Gilliam had children, appellant replied:

> Well, in other words, I was using a—it's kind of ironic.  I was using a metaphor, in other words.  I was trying to compare the situation that she was doing to me to if someone were to do her kids in that manner ma'am.

> The actual reason that the lady took me to jail, placed me into custody was for cursing, because she told me she was—you know, I was in my car and I was looking for the insurance and the license and I told her—I said, "Ma'am, I don't have my license."

> And she said, "No problem."  And she said, "Do you know your number? And I gave her my license number, and I cursed.  I said, "Ma'am, why are

5

you f***ing with me anyway?" And she said, "Sir, if you curse again, you're going to jail for profanity." And I said, "Man, you know what, I shouldn't—you shouldn't even be messing with me." I cursed again. And she said, "Get out [of] the car. You're going to jail for profanity."

And I just—I know I don't make the laws, you know; but I felt like that was unfair for—I said one curse word beforehand and I was going to jail for it and I was just trying to compare that to the fact of if you had children—I have a mother also, you know and—

When asked, "At any point did you intentionally or knowingly have—want to threaten this officer for arresting you", appellant responded, "No, ma'am."

On cross-examination, appellant clarified that when Officer Gilliam asked him if he wanted to go to jail for evading detention, he told her, "Who the f***s under detention because you hadn't asked me for my license or my insurance?" According to appellant, he continued cursing at Officer Gilliam because "once [he] was placed under arrest for profanity, [he] might as well curse as much as [he] want[ed] to." Appellant stated, "If you're taking me to jail for profanity, well, let me curse and earn my right to profanity is how I really felt at the time." Appellant denied touching Officer Gilliam or threatening her children. On re-direct examination, appellant stated that he did not have any intention of threatening Officer Gilliam's children.

After both sides had rested, the trial court indicated that it would need to review the video and "spend some time with it" before making a ruling.[5] Subsequently, at a separate proceeding, the trial court stated that it had reviewed the evidence, including the video, and found appellant guilty of retaliation. Appellant was sentenced to five years' confinement. This appeal ensued.

---

[5] The trial court stated that it had already viewed the video "once or twice."

## II. STANDARD OF REVIEW AND APPLICABLE LAW

In conducting a legal sufficiency review, we view the relevant evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[6] We do not reevaluate the weight and credibility of the evidence, and we do not substitute our own judgment for the trier of fact.[7] Instead, we consider whether the jury reached a rational decision.[8]

In a factual sufficiency review, we review the evidence in a neutral light to determine whether the evidence is so weak that the jury's verdict seems clearly wrong and manifestly unjust or against the great weight and preponderance of the evidence.[9] This Court will not reverse the jury's verdict unless we can say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the verdict.[10]

Retaliation occurs if a person intentionally or knowingly threatens to harm another by an unlawful act in retaliation for or on account of the service or status of another as a public servant.[11] Intent may be inferred from an accused's acts, words, or conduct.[12] It is

---

[6] *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Powell v. State*, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006); *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)); *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004).

[7] *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (en banc); *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd).

[8] *Beckham*, 29 S.W.3d at 151.

[9] *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).

[10] *Id.* at 417.

[11] TEX. PENAL CODE ANN. § 36.06; *Wiggins v. State*, 255 S.W.3d 766, 772 (Tex. App.–Texarkana 2008, no pet.); *see also Carter v. State*, No. 13-07-567-CR, 2008 Tex. App. LEXIS 8967, at **19-20 (Tex. App.–Corpus Christi Nov. 20, 2008, no pet.) (mem. op., not designated for publication).

[12] *Guevara*, 152 S.W.3d at 50 ("Intent may also be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant."); *Moore v. State*, 143 S.W.3d 305, 310 (Tex. App.–Waco 2004, pet. ref'd); *In re B.P.H.*, 83 S.W.3d 400, 407 (Tex. App.–Fort Worth 2002, no pet.); *Childs v. State*, 21 S.W.3d 631,

7

not required that the threatened retaliatory harm be imminent or that the actor actually intend to carry out his threat.[13]

## III. DISCUSSION

By his first and second issues, appellant contends that the evidence is legally and factually insufficient to support his conviction. Specifically, appellant asserts that he did not intentionally or knowingly make a threat to harm Officer Gilliam's children, but instead attempted to explain that Officer Gilliam would not want her children treated in the same manner.

Appellant argues that "neither Officer Gilliam nor the State were sure of exactly what appellant said that constituted the threat," and therefore, "Officer Gilliam's testimony constituted speculation . . . ."[14] However, Officer Gilliam was present when appellant allegedly made the threat, and she testified that she heard appellant threaten her children.[15] Therefore, appellant's argument is without merit.

Next, appellant states that Officer Gilliam's testimony is "at odds" with "the actual words [he] uttered." We have reviewed the entire video and have listened carefully to the portion of the video where Officer Gilliam claimed appellant threatened her children. In that portion of the video, appellant stated:

---

635 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd) ("Intent and knowledge are fact questions for the jury, and are almost always proven through evidence of the circumstances surrounding the crime. Intent may be inferred from words and conduct of the accused.") (internal citations omitted).

[13] *LeBleu v. State*, 192 S.W.3d 205, 209 (Tex. App.–Houston [14th Dist.] 2006, pet. ref'd); *In re B.P.H.*, 83 S.W.3d at 407; *Coward v. State*, 931 S.W.2d 386, 389 (Tex. App.–Houston [14th Dist.] 1996, no pet.).

[14] Appellant cites *Hooper v. State* defining "speculation" as the "mere theorizing or guessing about the possible meaning of facts and evidence presented." 214 S.W.3d at 16.

[15] Due to the poor sound quality of the video, it is difficult to understand everything that appellant says. We were able to understand only some of appellant's statements with intermittent portions that were unintelligible. However, as noted, Officer Gilliam testified as to appellant's statements.

You know what you need to do?  If you've got kids, miss.[16]  You know what you really need to do?  [Unintelligible] and pick up your [unintelligible].[17]  Cause one day some sh** like this gonna happen to [unintelligible].  Believe that.  They're gonna get f***ed by somebody for no reason and you're gonna be the reason for it.  It's gonna come back on you.  You're gonna be the reason why this happened.

There are portions of appellant's statements that are unintelligible in the video, and the portions that are clear substantiate Officer Gilliam's testimony.  Therefore, we cannot conclude that appellant's words are "at odds" with Officer Gilliam's testimony that appellant "threatened if anything happened to [her] children that [she] would know where it came from."  Appellant argues that the video is more consistent with his testimony; however, as the trier of fact, the trial court had the discretion to determine what weight to give to the evidence and whom to believe.[18]

Finally, appellant argues that the trial court could not have found beyond a reasonable doubt that he had the "specific intent or knowledge to threaten Officer Gilliam's children."  However, the trial court, as the trier of fact, may have inferred appellant's intent from his acts, words, and conduct.[19]  The State presented evidence that appellant was belligerent, shouted profanities, and was physically aggressive toward Officer Gilliam.

---

[16] At trial, the State quoted appellant as stating, "'Miss, do you have children?'"

[17] In his brief, appellant asserts he said, "Somebody needs to pick up your (bobolins?)."

[18] See Villarreal v. State, 267 S.W.3d 204, 209 n.30 (Tex. App.–Corpus Christi 2008, no pet.) (stating that in a legal sufficiency review "the fact-finder is the exclusive judge of the witnesses' credibility and the weight given to the evidence, may draw reasonable inferences from basic to ultimate facts, and is entitled to resolve any conflicts in testimony and reject or accept any or all of the evidence presented by either side") (citing Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996)); Swearingen v. State, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003) (stating that in a factual sufficiency review although an appellate court "is authorized to disagree with the jury's determination even if probative evidence exists which supports the verdict, a reviewing court must give due deference to the fact finder's determinations concerning the weight and credibility of the evidence and will reverse the fact finder's determination only to arrest the occurrence of a manifest injustice").

[19] See Guevara, 152 S.W.3d at 50; Moore, 143 S.W.3d at 310; In re B.P.H., 83 S.W.3d at 407; Childs, 21 S.W.3d at 635.

Officer Gilliam testified that "[i]n reference to the arrest," appellant threatened "the lives of [her] children or to hurt them or harm them." In the video, appellant is heard yelling, "Stupid a** b****" to Officer Gilliam repeatedly and stating, "You're f***ing with the wrong person" and "Believe that. They're gonna get f***ed by somebody for no reason and you're gonna be the reason for it."[20] In the video, appellant appears angry and defiant and directs his anger at Officer Gilliam. Also, later in the video, while at the jail, appellant says, "Like I said [unintelligible] in the car. [Unintelligible] get all f***ed up. Sh** like this where it come from. Just remember that sh** like this where it come from [unintelligible]."[21]

We conclude that a rational trier of fact could have inferred that appellant intentionally or knowingly threatened to harm Officer Gilliam's children from the evidence presented at trial.[22] Therefore, the evidence is legally sufficient to support the verdict. We overrule appellant's first issue.

Furthermore, after reviewing the evidence in a neutral light, we conclude that the evidence is not so weak that the jury's verdict seems clearly wrong and manifestly unjust or against the great weight and preponderance of the evidence.[23] Therefore, the evidence is factually sufficient to support the verdict. We overrule appellant's second issue.[24]

---

[20] Although it is not clear from the audio whom appellant referred to when he made this statement, Officer Gilliam testified that he was referring to her children.

[21] We note that an unknown man is then heard telling Officer Gilliam that appellant made a "terroristic threat" and that she needed to make a report of the incident. Officer Gilliam agreed.

[22] See Hooper, 214 S.W.3d at 13; Escamilla, 143 S.W.3d at 817.

[23] See Watson, 204 S.W.3d at 414-15.

[24] Appellant generally asserts, without citation to the record, that "it is obvious from the record that no one took the time to listen to the actual words spoken by [a]ppellant on the DVD." However, the video was played for the trial court at appellant's trial, and after each side rested, the trial court stated that it had already seen the video once or twice and then delayed finding appellant guilty so that it could review the video again.

## IV. CONCLUSION

We affirm the judgment.


LINDA REYNA YAÑEZ,
Justice


Do not publish.
TEX . R. APP. 47.2(b).
Delivered and filed the
15th day of July, 2010

11