

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00282-CR
### NO. 02-14-00283-CR
### NO. 02-14-00284-CR

JAKE PACE                                                          APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NOS. 1356790D, 1356792D, 1356797D

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

A jury found Appellant Jake Pace guilty in two cases of aggravated assault with a deadly weapon (a firearm) and in one case of retaliation and assessed his punishment at thirty months' confinement in each of the aggravated assault

---

[1]*See* Tex. R. App. P. 47.4.

cases and at two years' confinement in the retaliation case. *See* Tex. Penal Code Ann. § 22.01(a)(2) (West Supp. 2014), §§ 22.02(a)(2), 36.06(a)(1) (West 2011). The trial court sentenced Pace accordingly and ordered that the sentences run concurrently. In three issues, Pace argues that the evidence is insufficient to support each of his three convictions and that he received ineffective assistance of counsel. We will affirm.

## II. FACTUAL BACKGROUND

Pace's girlfriend Suzanne Pekny moved in with him around Christmas 2013. Both described the relationship as volatile, and they decided to end the relationship the following month. On the afternoon of January 22, 2014, Pace texted Suzanne that she could come to his house to pick up the remainder of her belongings. Suzanne's friend Caylie Wesson accompanied Suzanne to Pace's house.

Suzanne went inside the house briefly and found Pace walking around with her makeup bag. Pace asked Suzanne what she had brought him, and Suzanne replied that she did not bring him anything. Pace became very irate, slammed Suzanne's makeup bag on the ground, and stomped on it. Suzanne walked toward the door to leave, but Pace beat her out the door. He ran to Suzanne's car and retrieved something from the backseat. Suzanne heard Pace tell Caylie that she needed to get off his property or he was going to kill her. Suzanne told Caylie to get the pepper spray, and Caylie ran after Pace with the pepper spray.

2

Caylie testified that Pace made it inside his house before she could spray him. Caylie got in the car, and Suzanne drove away.

Suzanne soon noticed that Pace was following her in his vehicle. Suzanne testified that she was panicked and feared for her safety because she did not know what he was going to do. She said that she turned into the parking lot at a nearby school, hoping that "he would grasp the fact that we were at a school and that would, you know, maybe calm him down a little bit and make him snap to." Suzanne said that after she stopped, Pace drove up behind her car, passed her car, made a U-turn, and ended up bumper to bumper with her car. When Suzanne tried to back up, Pace backed up his car and put his left arm out the window. Caylie said that as soon as she saw Pace's arm come out of the car, she pulled Suzanne down into the middle of the car. Both Suzanne and Caylie testified that Pace fired three shots; however, Pace testified that he fired only two shots, and only two bullet holes and two shell casings were found. One of Pace's shots penetrated Suzanne's vehicle and landed only about a foot and a half away from Suzanne. The other of Pace's shots hit the vehicle's wiring harness, which disabled everything in Suzanne's car; she could not drive her car other than to pull it over to the curb. After firing the shots, Pace drove away from the scene. When Caylie looked up and saw that Pace was leaving, she called 9-1-1.

Shortly thereafter, Suzanne received a text from Pace stating, "Just call the cops and when I get out, I will kill you both. Caylie attacked me as I was running

3

into my house. Hardly an aggressive move on my part." Suzanne testified that Pace had previously threatened "a few times" to kill or maim one of her friends, but she said that he had never previously threatened to kill her. Suzanne testified that Pace's threat to kill her and Caylie was more real than previous times when he had threatened to kill her friends because he had just "got done shooting at me."

Police responded to the 9-1-1 call, and the nearby school was placed on lockdown. A short time later, officers arrested Pace at his home. Pace consented to a search of his home, during which officers located the gun used in the incident in the nightstand in his bedroom and found a spent shell casing—matching the one found in the back passenger-side floorboard of Pace's car—in a trash can in Pace's utility room.

Pace testified at trial regarding his version of the events of January 22, 2014. Pace said that when Suzanne arrived at his home and refused to return his belongings, he became irritated and threw her makeup on the front porch.

He went to her car to retrieve his belongings and heard Caylie say that he was about to "get maced." Pace said that when he saw the pepper spray, he ran to his front door. He said that he was hit on the left arm and on the neck with pepper spray but was not drenched because he had a hoodie on.

Pace testified that he got in his car to chase down Suzanne to retrieve his belongings and saw that she was at the very end of his street. When he was a block away, Suzanne turned left, then made the first right, pulled to the curb, and

4

stopped her car. Pace believed that Suzanne was content with the fact that she had attacked him—via Caylie spraying him with pepper spray—and was going to give him his belongings back.

Pace testified that he pulled around Suzanne so that he could talk to her through his passenger window. He asked her, "[W]hat the hell was that all about[?]" Pace said that at that point, Suzanne began to rev her engine, "she backed up[,] and then she started heading that way." Pace said that he pulled out the gun that was in his car and shot the front area of Suzanne's tire and that at the same time, he was backing away from the whole scene and headed to his house. He explained that he shot the second time because Suzanne was still advancing toward him with her vehicle after the first shot. He said that after the second shot, he could see Suzanne trying to turn the key, but her car would not start. He said that he knew the danger was gone, so he went home.

Pace explained that he did not start the fight; Suzanne and Caylie came to his home, refused to return his belongings, committed an assault on him, fled the scene, and then pursued him in an aggressive manner by attempting to hit him with a vehicle. Pace admitted that he had displayed a deadly weapon and that he had fired two shots into Suzanne's vehicle but claimed that he had done so in self-defense to stop Suzanne from running over him. Pace said that he had fired shots at Suzanne's vehicle not to threaten her and Caylie but to stop Suzanne from running over him and that his target was to disable Suzanne's vehicle so that she could no longer attack him.

5

Pace admitted that as he was pulling into his garage, he had sent a text message to Suzanne threatening to kill her and Caylie but said that he and Suzanne had threatened to kill each other every time they got into a fight. Pace also admitted that he had been known to threaten a lot of people; however, he testified that none of those threats were real and that he had not carried out any of the threats he had previously made. Pace said that he did not think that his text would scare Suzanne and Caylie because that was such a common communication from him that he did not think that Suzanne would take it seriously. Pace further testified that Suzanne visited him in jail two days after the incident.

### III. SUFFICIENCY OF THE EVIDENCE

In his first and second issues, Pace challenges the sufficiency of the evidence to support his two convictions for aggravated assault and his conviction for retaliation.

### A. Standard of Review

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to

6

draw reasonable inferences from basic facts to ultimate facts.  *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

The trier of fact is the sole judge of the weight and credibility of the evidence.  *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs*, 434 S.W.3d at 170.  Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder.  *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).  Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict.  *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).  We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution.  *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170.

We measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge for the case, not the charge actually given.  *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)); *see Crabtree v. State,* 389 S.W.3d 820, 824 (Tex. Crim. App. 2012) ("The essential elements of the crime are determined by state law.").  Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for

7

which the defendant was tried. *Byrd*, 336 S.W.3d at 246. The law as authorized by the indictment means the statutory elements of the charged offense as modified by the factual details and legal theories contained in the charging instrument. *See Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013); *see also Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

## B. Sufficient Evidence Supports Convictions for Aggravated Assault

Pace was charged with the offense of aggravated assault with a deadly weapon of both Caylie and Suzanne. A person commits an offense by knowingly threatening another with imminent bodily injury and using or exhibiting a deadly weapon during the commission of the assault. Tex. Penal Code Ann. §§ 22.01(a)(2), .02(a)(2). A firearm is a deadly weapon. Tex. Penal Code Ann. § 1.07(a)(17)(A) (West Supp. 2014). The act of pointing a loaded gun at an individual is, by itself, threatening conduct that supports a conviction for aggravated assault. *Fagan v. State*, 362 S.W.3d 796, 799 (Tex. App.—Texarkana 2012, pet. ref'd). It is not necessary that the defendant make any verbal threats. *Cantu v. State*, 953 S.W.2d 772, 775 (Tex. App.—Corpus Christi 1997, pet. ref'd).

Here, the evidence demonstrates that Pace had threatened to kill Caylie if she did not leave his property and that after Caylie and Suzanne had left his property, he began following them. Suzanne testified that she was fearful for her safety when she saw that Pace was following her in his vehicle. A rational jury could conclude that Caylie was fearful from her testimony that when she saw Pace's left arm coming out of the car, she pulled Suzanne down with her in the middle of the car. On cross-examination, Pace admitted that he had displayed a deadly weapon, that he had fired shots into Suzanne's vehicle, and that he "was firing at the person that was aggressing [him] with [her] vehicle."

Despite the preceding evidence establishing each of the necessary elements of aggravated assault with a deadly weapon, Pace argues that the State's opening statement and Suzanne's written statement—both of which included a statement that Pace had fired at Suzanne's car, rather than at her person—show that the State intended to prove and did prove only deadly conduct and that there is no evidence of an intent to place Suzanne and Caylie in fear for their safety. But Suzanne testified that she took seriously Pace's text message threatening to kill her because he had just "got done shooting *at me*," and Caylie testified that Pace "shot *at us* three times." [Emphasis added.] Moreover, a rational jury could conclude that the occupants of the car—Suzanne and Caylie—reasonably possessed a fear of imminent bodily injury when multiple shots from a firearm were fired at the vehicle they occupied. *See Applewhite v. State*, No. 05-11-00959-CR, 2013 WL 2420644, at *4 (Tex. App.—Dallas June

9

3, 2013, pet. ref'd) (mem. op., not designated for publication) (dismissing appellant's argument that victim never testified that "gun was ever trained on him" and holding evidence legally sufficient to support conviction for aggravated assault with a deadly weapon because appellant fired a gun in the victim's direction, hitting the victim's car in several locations, and based on appellant's conduct, victim thought that appellant was going to shoot him); *Fagan*, 362 S.W.3d at 799 (holding evidence legally sufficient to support conviction for aggravated assault with a deadly weapon because appellant had threatened victim's life on the night before the incident and had fired shots at the victim's car); *see also Schule v. State*, No. 05-13-01200-CR, 2015 WL 1859040, at *8 (Tex. App.—Dallas Apr. 22, 2015, no pet. h.) (not designated for publication) (holding evidence legally sufficient to support aggravated assault conviction because jury could have rationally concluded beyond a reasonable doubt that appellant was aware of the risk that the driver of or the passenger in the vehicle at which appellant was shooting could be injured). Pace also contends on appeal that Suzanne's testimony, as a whole, lacked credibility, but in our sufficiency review, we may not re-evaluate the weight and credibility of the evidence. *See Isassi*, 330 S.W.3d at 638.

We hold that, when viewed in the light most favorable to the verdicts, sufficient evidence exists for a reasonable jury to find Pace guilty in each case of aggravated assault with a deadly weapon beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 324–26, 99 S. Ct. at 2789, 2792–93 (applying

sufficiency standard and holding evidence sufficient to support conviction); *Applewhite*, 2013 WL 2420644, at *4; *Fagan*, 362 S.W.3d at 799. We overrule Pace's first issue.

### C. Sufficient Evidence Supports Conviction for Retaliation

In the retaliation case, the State was required to prove beyond a reasonable doubt that (1) Pace (2) intentionally or knowingly harmed or threatened to harm Suzanne by an unlawful act (3) in retaliation for or on account of the service or status of Suzanne (4) as a person who has reported or who Pace knew intended to report the occurrence of a crime. *See* Tex. Penal Code Ann. § 36.06(a)(1)(B); *In re B.P.H.*, 83 S.W.3d 400, 407 (Tex. App.—Fort Worth 2002, no pet.). The statute does not require that the threatened retaliatory harm be imminent, nor does it require that the actor actually intend to carry out his threat. *In re B.M.*, 1 S.W.3d 204, 207 (Tex. App.—Tyler 1999, no pet.).

Here, Pace admits that "[t]he testimony was clear that [he] had texted Suzanne in the minutes following the shooting" that he would kill Suzanne and Caylie if they called the police. Pace, however, argues on appeal that he and Suzanne had threatened to kill each other every time they got into a fight, that there was no testimony from Suzanne that she had felt threatened by the death threat in Pace's text following the shooting, and that Suzanne's conduct in visiting Pace in jail two days after the shooting indicates that she did not take the death threat seriously. As set forth above, whether the victim felt threatened is not an element of the offense of retaliation. *See* Tex. Penal Code Ann. § 36.06(a)(1)(B);

11

*see also Goode v. State*, No. 03-10-00254-CR, 2011 WL 477038, at *2, *6 (Tex. App.—Austin Feb. 9, 2011, no pet.) (mem. op., not designated for publication) (holding evidence legally sufficient to support conviction for retaliation despite that victim had visited appellant in jail and had written letters to him after he had threatened her); *B.P.H.*, 83 S.W.3d at 408 (holding evidence legally sufficient to support conviction for retaliation even though victim testified that he did not take appellant's threat seriously). Pace thus has not challenged on appeal any specific element of the offense of retaliation.

We hold that when viewed in the light most favorable to the verdict, sufficient evidence exists for a reasonable jury to find Pace guilty of retaliation beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 324–26, 99 S. Ct. at 2789, 2792–93; *Goode*, 2011 WL 477038, at *6 (holding evidence legally sufficient to support conviction for retaliation based on evidence that appellant had threatened victim that "everybody will die" if victim called 911 and had sent text messages to and had left voice mails for victim further indicating that appellant would kill each of victim's family members); *B.P.H.*, 83 S.W.3d at 408 (holding evidence legally sufficient to support conviction for retaliation based on evidence that appellant had pulled a knife on victim and had told victim that he was going to kill him and both of his parents if victim told anyone about appellant's plan). We overrule Pace's second issue.

12

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

In his third issue, Pace argues that he received ineffective assistance of counsel.

### A. Standard of Review

To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that his counsel's representation was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). An ineffective-assistance claim must be "firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the claim. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Direct appeal is usually an inadequate vehicle for raising an ineffective-assistance-of-counsel claim because the record is generally undeveloped. *Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012); *Thompson*, 9 S.W.3d at 813–14. In evaluating the effectiveness of counsel under the deficient-performance prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson,* 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065; *Nava*, 415 S.W.3d at 307. Review of counsel's representation is highly deferential, and the reviewing court indulges a

strong presumption that counsel's conduct was not deficient. *Nava*, 415 S.W.3d at 307–08.

It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record or when counsel's reasons for failing to do something do not appear in the record. *Menefield*, 363 S.W.3d at 593; *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593. If trial counsel is not given that opportunity, we should not conclude that counsel's performance was deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Nava*, 415 S.W.3d at 308.

The prejudice prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial with a reliable result. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In other words, appellant must show there is a reasonable probability that, without the deficient performance, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308. The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2070.

## B. Prejudice Prong Not Met

Here, Pace argues that his trial counsel was ineffective because of her "sloppy preparation" as shown by her motion in limine, which was filed the day trial began, was left unfinished, and was violated by trial counsel in her own direct examination of Pace; her lack of understanding of the hearsay rule, which undermined her efforts to prove inconsistent statements by the victim; trial counsel's unfamiliarity or inability to understand the holdings in various cases that she cited as the basis for her defense and her resultant improper application of the case law to the facts of the case; and her lack of understanding or unfamiliarity with firearms and her failure to hire an expert well in advance of the trial to explain her theory of the case to the jury.

Even if we could somehow construe the alleged deficiencies as meeting the deficient-performance prong of *Strickland*, Pace has not shown a reasonable probability that, without the deficient performance, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308. As set forth above, Pace admitted that (1) he had fired a deadly weapon into the vehicle where Suzanne and Caylie were sitting and (2) in the minutes following the shooting, he had texted Suzanne that he would kill her and Caylie if they called the police. Pace's own admissions thus establish every element necessary to support his convictions. *See* Tex. Penal Code Ann. §§ 22.01(a)(2), .02(a)(2), 36.06(a)(1). Additionally, Pace received the minimum or a near-minimum sentence for each of his three felony convictions.

15

*See id.* § 12.33(a) (West 2011) (providing that punishment range for second-degree felony, such as aggravated assault with a deadly weapon for which Pace was sentenced to thirty months' confinement, has a sentencing range of two to twenty years' confinement), § 12.34(a) (West 2011) (providing that punishment range for third-degree felony, such as retaliation for which Pace was sentenced to two years' confinement, has a sentencing range of two to ten years' confinement).  Pace therefore has not satisfied the prejudice prong of *Strickland*. 466 U.S. at 687, 700, 104 S. Ct. at 2064, 2071 (applying standard of review and holding that appellant did not make showing of prejudice); *see also Burgess v. State*, 448 S.W.3d 589, 603–04 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (concluding that even if counsel's performance were deficient, appellant had not satisfied the prejudice prong of *Strickland*).  We overrule Pace's third issue.

## V. CONCLUSION

Having overruled Pace's three issues, we affirm the trial court's judgments.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ.

DAUPHINOT, J., concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  June 18, 2015

16